Case 4:07-cv-04925-CW    Document 1    Filed 09/21/2007    Page 1 of 17

E-Filing

1   **COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C §§ 1983**

2   Name  Woodson          Thomas           R
3          (Last)            (First)          (Initial)

4   Prisoner Number  P-74095

5   Institutional Address  H.D.S.P, P.O. Box 3030 Susanville CA. 96127

6   ==============================================================

7                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF CALIFORNIA
8
    Thomas Ray Woodson
9   (Enter the full name of plaintiff in this action.)              RICHARD W. WIEKING
                                                                    CLERK, U.S. DISTRICT COURT
10                    vs.                                           NORTHERN DISTRICT OF CALIFORNIA
                                                                    _____
11  J. Rodriguez, E. Camarena, J. Parra                             (To be provided by the Clerk of Court)
12  D. Vega, Sgt. Kircher                                           **COMPLAINT UNDER THE
                                                                    CIVIL RIGHTS ACT,**
13  _____                                 Title 42 U.S.C § 1983

14  _____                                 C 07 4925
    (Enter the full name of the defendant(s) in this action)
15                                                                                              CW

16  *[All questions on this complaint form must be answered in order for your action to proceed..]*

17  I.    Exhaustion of Administrative Remedies.                                                (PR)

18        [<u>Note:</u> You must exhaust your administrative remedies before your claim can go

19        forward. The court will dismiss any unexhausted claims.]

20        A.    Place of present confinement  High Desert State Prison

21        B.    Is there a grievance procedure in this institution?

22              YES (✓)    NO ( )

23        C.    Did you present the facts in your complaint for review through the grievance

24              procedure?

25              YES (✓)    NO ( )

26        D.    If your answer is YES, list the appeal number and the date and result of the

27              appeal at each level of review. If you did not pursue a certain level of appeal,

28              explain why.

COMPLAINT                            - 1 -

1. Informal appeal _Bypassed by S.V.S.P / S.V.S.P, C-06-00952 June 2, 2006_
   _Please refer to Ex. A_

2. First formal level _Partially Granted, returned August 21, 2006_
   _Please refer to Ex. A_

3. Second formal level _Partially Granted, returned Aug. 29, 2006_
   _Please refer to Ex. A_

4. Third formal level _denied Plaintiff the right to an independent Dept. of Internal affairs investigation, and the right not to be retaliated against for filing grievance S.V.S.P 06-00952_
   _Please refer to Ex. A    Feb. 21, 2007_

E. Is the last level to which you appealed the highest level of appeal available to you?

    YES (✓)    NO ( )

F. If you did not present your claim for review through the grievance procedure, explain why. _____

## II. Parties.

A. Write your name and your present address. Do the same for additional plaintiffs, if any.

_Thomas Ray Woodson P-76095, C-8-113_
_High Desert State Prison, P.O. Box 3030_
_Susanville CA. 96127_

B. Write the full name of each defendant, his or her official position, and his or her place of employment.

_J. Rodriguez, E. Camarena, J. Parra, D. Vega, Sgt. Kircher_

COMPLAINT                  - 2 -

III. Statement of Claim.

State here as briefly as possible the facts of your case. Be sure to describe how each defendant is involved and to include dates, when possible. Do not give any legal arguments or cite any cases or statutes. If you have more than one claim, each claim should be set forth in a separate numbered paragraph.

On March 23, 2006 at approximately 1:00 p.m. plaintiff was wantonly, maliciously and sadistically abused by several Salinas Valley State Prison Gaurds under of Color of State law, four gaurds and their Supervising officer Sgt. Kircher are hereby being sued in their individual Capacity for the specific acts amounting to Cruel and unusual Punishment. Corrections officer J. Rodriguez, Corrections officer E. Camarena, Corrections Officer D. Vega, Corrections officer J. Parra, and Corrections officer Sgt. Kircher. These defendents at all times mentioned in this complaint acted under the Color of State law. The gaurds actions were unnecessary and unreasonable serving no penalogical purpose. Causing plaintiff multiple injury to his physical, mental, and emotional person. Reprisal and retaliatory transfer was used against plaintiff as punishment for excorcizing plaintiff's right to file a prison grievance. See detailed Appendix A-K pgs. 1-11 w/Exhibits A-R (I-VIII Amend Const. Violation)

IV. Relief.

Your complaint cannot go forward unless you request specific relief. State briefly exactly what you want the court to do for you. Make no legal arguments; cite no cases or statutes.

Wherefore, Plaintiff respectfully prays that this Court enter a Judgement granting Plaintiff a declaration that the acts and omissions described herein violated Plaintiff's rights under the Constitution and laws of the United States. Compensatory damages in the amount of $100,000.00 against each defendent jointly and severally. Transfer from H.D.S.P to Prison closer to Plaintiff's family and home, preferrably CCI Tehachipi.

COMPLAINT - 3 -

1  Punitive damages in the amount of $50,000.00 against each defendent.
2  Nominal damages in the amount of $50,000.00 against each defendent. A Jury
3  trial on all issues triable by jury, plaintiffs' cost in this suit. Any additional
4  relief this court deems just, proper and equitable

5  I declare under penalty of perjury that the foregoing is true and correct.

7  Signed this ___4th___ day of __September__, 20_07_

9  _____Thomas Woodson_____
10  (Plaintiff's signature)

11  Respectfully Submitted

COMPLAINT                          - 4 -

# Appendix "A"

On March 23, 2006 at approx. 1:00 p.m. a dubious mass cell search for a supposedly missing sheet pan out of building #1 and 2 kitchen, which is in no way connected to bldg.#3-4 was conducted in building #3 of C-facility at Salinas Valley State Prison during a facility lockdown that had been in effect since July 2005. Plaintiff was in his cell in A-section cell #105 of bldg.#3 reading and studying for his Coastline Community College correspondence course that Plaintiff paid $151.00 dollars for. Plaintiff looked out his cell door window and saw several guards enter A-Section day room. Guards J. Rodriguez, E. Camarena, and J. Parra were approaching Plaintiff's cell with menacing looks on their faces and indifference in their eyes. Guard J. Rodriguez told Plaintiff to "turn around and cuff up," meaning to turn your back to the door and place your hands and wrist through the food port on the door so handcuffs can be placed on an inmates wrist to secure him for escort before opening his cell door. A common procedure used when the inmate population is on lockdown. Plaintiff promptly complied with the order. Guard E. Camareno signaled to tower officer Cano to open Plaintiff's cell door. Plaintiff's cell door was opened, Plaintiff was then unnecessarily grabbed aggressively by the left arm by guard J. Parra and pulled violently out of the cell and was placed in front of the wall to the left of cell #105 beside the wall window allowing one to see into cell #105. As Plaintiff stood, face inches away from the wall, Plaintiff could see through the cell wall window as guards J. Rodriguez and E. Camarena were thrashing Plaintiff's cell by throwing Plaintiff's property around (books) snatching sheets and blankets off of Plaintiff's bunk, knocking hygene products off of locker shelves to the floor, busting them open. None of these actions could be justified as having penalogical or legitimate purpose.

Plaintiff slightly turned his head to the right looking for a superior officer to inform about the harrassment he was going through under the guise of "cell search". Out of Plaintiff's peripheral vision Plaintiff spotted Sergeant Kircher standing in the middle of the day room. Plaintiff spoke up, saying, "I need to speak with you Sergeant, I am being harrassed." Plaintiff's attempt to inform Sgt. Kircher of the arbitrary and punitive action was met with deliberate indifference by Sgt Kircher as he

(1)

Appendix

walked up ▮ near Plaintiff with a menacing look totally ignoring Plaintiffs information. Plaintiff attempted to inform Sgt. Kircher again of the arbitrary and capricious actions of his subordinates as plaintiff again was met with deliberate indifference by Sgt. Kircher.

Gaurd J. Parra aggresively and unnecessarily shoved Plaintiff in the back and pressed his right forearm to the right side of plaintiffs neck, telling plaintiff to, "shut the fuck up." Plaintiffs left side of his ▮▮▮▮▮ face, his chest and legs were pinned up against the wall in discomfort and pain. Plaintiff asked Sgt. Kircher was he condoning this harrassment, again with disregard Sgt. Kircher gave plaintiff a menacing look without responding to the inquisition.

Sgt. Kircher ordered gaurd J. Parra and gaurd D. Vega to, "get him (Plaintiff) out of here." Gaurd J. Parra then aggressively grabbed Plaintiffs left arm with both of his hands, while gaurd D. Vega aggressively grabbed plaintiffs right arm. Gaurd J. Parra and D. Vega violently snatched Plaintiff off the wall and spinning him around than pushing Plaintiff toward the entrance and exit door to the rotunda. Plaintiff again asked Sgt. Kircher was he sanctioning this harrassment? again the question was met with hostile, deliberate indifference by his blank menacing stare. Than to prove he had no regard or concern for inmate issues, Sgt. Kircher wantonly, maliciously, and without cause, justification or provokation ordered gaurd J. Parra and D. Vega to take Plaintiff down.

Gaurd J. Parra kicked Plaintiffs feet out from under him, causing Plaintiff to fall face first to the pavement while cuffed behind his back and non-combative the entire time. While on the pavement gaurd J. Parra used further unnecessary brut force by bending Plaintiffs cuffed right wrist and arm up toward Plaintiffs head causing excruciating pain to Plaintiffs wrist and shoulder joints.

Gaurd D. Vega dropped his knee with full body weight to plaintiffs neck and upper back, laughing and giggling at Plaintiffs squeels of pain. Gaurds J. Rodriguez and E. Camarena responded to the commotion with several other unidentified gaurds searching the A-Pod. Gaurd J. Rodriguez jumped right into the center of

(7)

# Appendix C

Plaintiffs back in between gaurd J. Parra and gaurd D. Vega, knocking D. Vega off his position on top of plaintiff, all the while, laughing and giggling. Plaintiff could feel himself being kicked by the unidentified gaurds on his legs and hips (Please see Declarations from eye witnesses attached to Ex. A). Several unidentified gaurds took turns pouncing and dog pile jumping on plaintiffs back for no reason other than to wantonly and maliciously inflict pain. Gaurd J. Rodriguez then took plaintiff's right foot and began to twist it as if he was trying to break it, causing acute pain to plaintiff's ankle and knee joint. Gaurd J. Rodriguez then said, "give me the leg irons," upon recieving them, gaurd J. Rodriguez put the shackles on plaintiff and squeezed the ankle cuff extremely tight, cutting off circulation, further punishing an already secured and non-combative plaintiff. Plaintiff was brutally snatched to his feet by gaurd J. Parra on his right arm and gaurd D. Vega on his left arm. Both plaintiffs' arms were stretched upward toward the ceiling by both gaurds J. Parra and D. Vega causing plaintiff to keel over. Gaurd J. Parra placing his left arm under plaintiff's right arm and cuff, applying undue pressure to plaintiff's right shoulder causing plaintiff to scream out in pain. Gaurd D. Vega simaltaneously mirrored the process on plaintiff's left arm. Plaintiff was then forced to move at a fast pace toward the exit door of the building not able to see what was in front of him due to his upper body being forced downward. The shackles around plaintiffs' ankles squeezed so tight made it difficult and down right painfull to be moved in such an awkward position. Plaintiff boxer underwear had fallen down as a result of the rough housing brutality exposing plaintiffs genitalia, humiliating plaintiff. Plaintiff was taken outside of the building and thrown to the concrete pavement by gaurds J. Parra and gaurd D. Vega, damaging plaintiffs knees, seperating his shoulder and scraping the skin off of an already swollen eye (right) from being kicked off his feet inside the building. Plaintiff screamed out with pain as blood streamed down plaintiffs face. Plaintiff informed Sgt. Kircher his shoulder was dislocated. Sgt. Kircher again did not intervene or stop his subordinates from the brutality, nor did he respond to plaintiffs wails of pain or blood streaming down plaintiffs face.

Appendix D

Sgt. Kircher instructed E. Camarena and J. Rodriguez to take over the escort from gaurds J. Parra and D. Vega. Gaurd E. Camarena grabbed plaintiff's right arm with both hands sending shocking waves of burning pain through plaintiff's dislocated shoulder causing plaintiff to scream out in excruciating pain as gaurd J. Rodriguez laughed and grabbed plaintiff by his left arm with both his hands. Both gaurds J. Rodriguez and E. Camarena yanked plaintiff to his feet placing plaintiff in the akward arm position that the former gaurds J. Parra and D. Vega used despite plaintiff's screams and petitions to stop because he was hurt. Gaurd J. Rodriguez said, "Shut the fuck up munchee chee," and laughed as he and gaurd E. Camarena forced plaintiff to walk at a fast pace across the prison yard while the shackles cut into plaintiff's flesh just above the ankle causing them to bleed.

Plaintiff pleaded with his torturers and their sergent to stop and at least let plaintiff walk up right. Sgt. Kircher told gaurd E. Camarena and gaurd J. Rodriguez to put plaintiff down. Gaurd J. Rodriguez laughed and said, "Sure." Plaintiff was again kicked off his feet in the middle of the recreation yard in the grass and dirt. Gaurd J. Rodriguez then dropped both his knees and full body weight into plaintiff's back and arms causing great pain. Gaurd E. Camarena grabbed the back of plaintiff's head and mashed his face in the ground with his right hand muffling the screams of agony by plaintiff, also causing suffocating oxygen reduction. Sgt. Kircher said, "check his restraints." Gaurd J. Rodriguez said oh! O.K.! he than lifted plaintiff's legs, grabbed both the shackle cuffs and squeezed them to make sure they were as tight as could possibly be despite the fact that plaintiff was already bleeding just above the ankle. Gaurd J. Rodriguez wantonly did the same with the handcuffs, taking out a key and locking them that way to make sure the pressure and the pain stayed that way. Plaintiff felt himself getting light headed and starting to go numb from the pain plus not being able to breath freely with plaintiff's face being pressed in the grass by gaurd E. Camarena. Before plaintiff could pass out, plaintiff

APPENDIX "E"

was yanked to his feet by gaurds J. Rodriguez and E. Camarena. Once again plaintiff was placed in the awkward arm position, bent over with arms to the sky, placing pressure on plaintiff's dislocated joint causing burning fiery excruciating pain. Plaintiff was again thrown to the concrete pavement by gaurds J. Rodriguez and E. Camarena upon reaching the patio area in between the law library and school door and the chapel door at which point plaintiffs right arm bone popped back into socket.

Plaintiff was again lifted to his feet by J. Rodriguez and E. Camarena while weak and weary, bleeding from his face, knees, and lower chins just above the ankles from the pressure of the shackles, wrist swollen from the squeeze of the handcuffs. Plaintiff was taken two doors down into the old hobby shop turned into what they have termed a "health annex". Plaintiff was placed in a small room in the back in a standing room only strip cage by gaurds J. Rodriguez and E. Camarena under the supervision of Sgt. Kircher. Plaintiff requested for removal of the shackles and handcuffs that were cutting off plaintiffs circulation, causing his hands and feet to swell. Plaintiff's request were ignored and laughed at by both gaurd J. Rodriguez and Sgt. Kircher, as gaurd J. Rodriguez, E. Camarena and Sgt. Kircher left the room gaurd J. Rodriguez added insult to injury by turning off the light switch in the small room leaving plaintiff in complete darkness, in psycological and physical pain. Plaintiff heard the officers (gaurds) J. Rodriguez, E. Camarena, D. Vega, J. Parra and Sgt. Kircher, in the conjoining room, calling plaintiff degrading names and conspiring to cover up their malicious, sadistic and wanton activity by saying plaintiff was somehow "resisting". (See EX. B)

Gaurd J. Rodriguez would open the door to the small room, poke his head in, fick on the light and taunt the battered plaintiff by specifically saying, "are you dead yet," and, "Man, you got fucked up." laughing and flicking the light switch back off. R.N. Moore with indifference finally came after plaintiff being in the cage in the dark and in excruciating pain, bleeding in shackles and handcuffs for over 45 minutes. Plaintiff requested to see a doctor about his dislocated shoulder and for pictures to be taken of his eye and other injuries. Plaintiff was denied by R.N. Moore several times.

Appendix "F"

Approximately 30 minutes later Doctor Sue came to examine Plaintiff's injuries. Plaintiff could see shock on Dr. Sue's face as he observed plaintiffs condition in the small cage. Dr. Sue, looking intimidated timidly requested gaurd J. Rodriguez to uncuff Plaintiff so he could examine his injuries. Gaurd J. Rodriguez sucked his teeth and gave plaintiff a menacing look as he opened the food port and pointed a spray can of O.C. pepper spray at plaintiff's face for no reason and said, "Gimme your fucking cuffs." Plaintiff struggled through his pain to turn around in the tight space and put his hands through the food port. Plaintiff asked gaurd J. Rodriguez to be careful taking his cuffs off. Ignoring plaintiffs plea, gaurd J. Rodriguez snatched and pulled on plaintiffs hands roughly and brutally causing excruciating pain to shoot up plaintiffs arm to his injured shoulder.

Dr. Sue, looking very fearful of gaurd J. Rodriguez, began an impromptu visual examination of plaintiffs injuries under insufficient lighting while Plaintiff was still inside the extremely small cage space shackled. Dr. Sue noted several injuries to plaintiffs body and instructed R.N. Moore to document them on CDC form 7219 wich she reluctantly did, with indifference, (See Ex. C) Plaintiff again requested pictures be taken of his injuries and a sling for his weakend and bruised shoulder that was dislocated and relocated during the abuse. Plaintiff's request was ignored by Dr. Sue with no response. Dr. Sue, fearful and intimidated by gaurd J. Rodriguez, just left out of the area. Plaintiff was left in the standing room only cage, weak and injured with shackles squeezed extra tight for another two hours approximately. During this period gaurd D. Vega came into the small room and told plaintiff that he didn't have anything to do with it. Plaintiff asked gaurd D. Vega, what didn't he have to do with? he then left the room looking nervous and never returned.

Plaintiff was escorted back to his general population cell #105 in building 3 on C-facility by Sgt. Lutes on 3rd watch at approximately 4:15 p.m. Still shackled and rehandcuffed, injured and weak, Plaintiff made the trek across the yard. Plaintiff was returned to a cell that was ramshacked, his Lumbar Supporter stolen (see Ex. D)

Plaintiff immediately filed a staff misconduct complaint per 837.5 of the penal code concerning the abuse and harrassment taken place from approx. 1300 p.m. — 1615 p.m. on March 23, 2006 (See Ex. A) and gathered declarations from eyewitnesses, putting administration on notice of the violations.

(6)

<u>Appendix G</u>

Retaliation and reprisal came as a timely attack by Salinas Valley state Prison administration as a result of Plaintiff submitting his 602 appeal staff complaint. Plaintiff put Appeals Coordinator E. Medina on notice of the arbitrary administrative action. The retaliatory attacks came in the form of segregation from the general population under the guise of investigation. adverse and unfair treatment while in segregation. Deliberate indifference by E. Medina Appeals Coordinator who purposely and unjustly disposed of, disregarded, and spuriously screened out several of Plaintiffs 602 appeals (See Ex. E). unecessary and adverse transfer to S.V.S.P.'s sister prison, High Desert state prison over 500 miles away from Plaintiffs family and loved ones putting Plaintiff and his family in significant hardship (See Ex. F) There was absolutely no justification for or legitimate penological purpose for these arbitrary administrative actions and the timing was conspicuous evidence of retaliation for Plaintiffs excercise of his first Amendment right to file a prison grievance.

The 602 administrative appeal staff complaint was submitted to the Salinas Valley State Prison Appeals Coordinator on march, 26, 2006 via institutional mail by Plaintiff. Subsequently Plaintiff recieved a retaliatory prison write up CDC 115 (See Ex. D) on April 5, 2006 conspicuously to cover up, smear, and justify the events taken place on march 23, 2006. On April 11th 2006 Plaintiff's cell #105 in Bldg. 3 was approached by an unidentified gaurd with his name badge covered by a black patch of cloth. Plaintiff was lied to by this gaurd as he told Plaintiff that a Sergent wanted to interview him about a 602 administrative appeal he wrote. Plaintiff Cuffed up and was escorted to the so called Health annex, the same dungeon of torture and abuse Plaintiff was taken to on the day of the incident (march 23,2006). Plaintiff looking perplexed asked to speak with a Captain or Senior officer to discern what was going on. The unidentified gaurd laughed in Plaintiffs face and told Plaintiff to "strip out" meaning to unclothed. Plaintiff asked the unidentified gaurd what his name was. The gaurd pulled out his OC-9 pepper spray canister from his waist holster and pointed it at Plaintiff. With a menacing expression on his face, the gaurd said "Take off your fucking clothes." Plaintiff, not wanting to be unduly sprayed with burning, lungs collapsing spray complied with the request. Right then Plaintiff knew there was no legitimate purpose and this was another arbitrary administrative action in retaliation for Plaintiffs grievance. The timing couldn't make this fact more obvious.

-1-

Appendix "H"

After approximately two hours in the standing room only cage in nothing but underwear Plaintiff was told by Sgt. Selby that he was going to be placed in Administrative Segregation for 30 days pending investigation into the incident that occurred March 23, 2006 (See Ex. G). Plaintiff was not afforded the opportunity to witness his personal property. In fact, gaurd Blevens who plaintiff learned packed plaintiff's property misappropriated and abandoned several articles of plaintiff's property, leaving invaluable personal property in plaintiffs general population cell bldg. 3, #105 to be disregarded by other bldg. inmates. However witnesses (inmates) informed the D.A.'s office of Monterey County about the disregard to plaintiff's property and retaliation (see Ex. H). Some inmates even gathered up some of plaintiffs property and sent it to his family.

Plaintiff was escorted to Ad-Seg in boxers underwear and t-shirt in barefeet through the freezing cold that evening after spending approximately 4 hours in the standing room only cage. Gaurd Blevens denied plaintiff shower slippers to put on.

In Administrative segregation on this <u>Non-Disciplinary</u> circumstance, Plaintiff was treated deplorably by staff in obvious retaliation for plaintiffs excercising his first Amendment right to file a prison grievance as some of the gaurds made abundantly clear (see Ex. I) Plaintiff was routinely cursed at, rough housed being escorted to showers, denied essential cleaning materials and religious dietary meals. There were punitive and harrassing cell searches. Plaintiff was denied his correspondence course material and subsequently failed the course as a result of the denial. Plaintiff paid 151.00 dollars to participate in the Coastline Community College course (see Ex J.) Plaintiff was denied timely and adequate medical treatment for his injuries sustained on March 23, 2006. Plaintiff was taken to another AD-Seg bldg. D-2 in June of 2006. There Plaintiff was denied a mattress to sleep on for over a month and a half. Plaintiff was treated worse than those of whom were in AD-SEG under disciplinary circumstances. Again and again plaintiff utilized the Administrative appeals process to no avail. The Appeals coordinator Eloy Medina spuriously and unduly screened them out or lost them (see Ex. K). Plaintiff wrote several Warden correspondences to Warden M.S. Evans explaining the ill retaliatory treatment and the indifference displayed by the Appeals coordinator Eloy Medina, rendering administrative remedy inadequate and utterly defunct. Some correspondences were blatantly not responded to, others were responded to by lower level subordinates with threats of disciplinary action if Plaintiff by passed the Administ-

ive remedy that plaintiff demonstrated was inadequate and corrupt (see Ex. L) Plaintive even sent a writ of habeas corpus in to the Monterey County Court petitioning for the stoppage of the inhumane treatment and inadequate Administrative remedy. The court ordered informal response by the respondent, only for them to erroneously tell plaintiff he didn't exhaust his administrative remedy. Administrative remedy is part of the complaint and problem put forth (See Ex M)

No adequate investigation was conducted within 30 days plaintiff was placed into administrative seoregation. Plaintiff requested on the 602 appeal complaint that an independent Department of Internal affairs investigation be conducted (See Ex. A) There was none. Plaintiff contacted the Monterey County District Attorneys (See Ex. N) office of Dean Flippo twice to inform him of the matter. The District Attorney's office informed plaintiff they were sorry for the delay and that they would be contacting the prisons I.S.U to conduct an investigation into the matter. This response was unacceptable due to the fact Plaintiff informed the D.A. of his request for an investigation independent of the institution's functions, as their pattern of "Green Wall Gang" Corruption and cronyism renders institutional investigations defunct. Where cover ups, smear campaigns and arbitrary administrative acts are perpetuated and maintained by lower level subordinates all the way up the chain to executive Personnel (See Ex. A).

Plaintiff wrote several outside entities for help (See Ex. O) Plaintiff find remedy to the arbitrary administrative actions with negative results. Plaintiff spent 8 months and 15 days in S.V.S.P AD-Seg, of what was supposed to be a 30 day administrative investigation of plaintiffs staff misconduct appeal from March 23, 2006. Plaintiff was illegally put up for an involuntary adverse transfer to an institution (H.D.S.P) over 500 miles away from Plaintiffs home, family and loved ones. Plaintiffs explained to Inmate Classification Committee Chairman Moore and members CCII Meden, CCI Garcia that the transfer was being illegally and punitively enforced upon plaintiff for plaintiffs exorcising his <u>first amendment right of the U.S. Const. to file a prison grievance</u>. Plaintiff informed Committee members that the arbitrary action would cause undue and significant hardship to plaintiff and his family. Committee members, chairman moore, CCII meden showed deliberate indifference by completely ignoring plaintiff as if plaintiff had did something wrong by filing staff misconduct. They elected to retain plaintiff in Admin. Segregation pending illegal transfer (July 20, 2006). (▓▓▓▓) (See Ex. P)

(9)

On November 30th, 2006 a subsequent committee was held in AD-Seg for Plaintiff and plaintiff was again put up for involuntary adverse transfer to High Desert State Prison an institution over 500 miles away from plaintiffs family and loved ones. Plaintiff again explained the illegal nature of the transfer and how the location is unacceptable, causing undue hardship on Plaintiff and family. Committee members, Chairperson L. Trexler, (fc) B. Rankin, CCII Meden, being facetious, laughed at Plaintiff, saying "well we don't want to 'appear' to be retaliating on you. On paper the committee rescinded the transfer and its nature to High Desert State Prison and recommended plaintiff be sent to CCI Tehachipi, closer to plaintiffs home, however, this was a machination that became evident when Plaintiff recieved a second endorsement to High Desert State Prison. With a spurious excuse of bed space availability. Plaintiff had been waiting in AD-Seg over 180 days endorsed to that institution post the original endorsement on July 20, 2006. Within a week of appealing this Nov. 30, 2006 endorsement per Administrative Code, Plaintiff was unduly and punitively transferred December 26, 2006 to High Desert State Prison and the appeal discarded by E. Medina appeals coordinator. Plaintiff was further punished by being transferred without Plaintiffs personal or legal property, Placing Plaintiff in further hardship. Plaintiff filed several 602 Appeals immediately upon arrival to recieving institution about plaintiffs property missing particularly his "legal" property. The appeal system being grossly inadequate, indifferent and ineffective Plaintiff's 602's were not responded to in timely manner nor were they being processed according to Title 15 rules. Plaintiff, upon information and belief sees High Desert State Prison rogue and discriminatory just as Salinas Valley State Prison. Plaintiff sent out wardens correspondences to both institutions Wardens and appeals coordinator. Also reaching out to the prison law office, Inspector Generals office, Internal Affairs ek... with negative results. The timing of these events following the incident on March 23, 2006 is conspicuous evidence of retaliation. Plaintiff did not recieve his property until May 4, 2007 approx. 5 months after arriving to H.D.S.P (see EX. Q).

    Plaintiff affirms, re allege, and reincorporates all the information presented in this civil complaint under the Civil Rights Act Title 42 U.S.C § 1983 as truth under penalty of perjury that plaintiffs First Amendment right and Eighth Amendment right to the United States Constitution was sadistically, maliciously, and wantonly violated by J. Rodriguez, E. Camarena, J. Parra, D. Vega, and Sgt Kircher amongst others.

*Appendix K*

Plaintiff aver that the arbitrary actions mentioned are regular occurrances at Salinas Valley State Prison in Soledad. Their precedent has been nationally documented and published, (Please see Ex. R) however, they continue to rogue operate with impunity despite exposure. In so doing putting aside the supreme law of the land (U.S.C) with disregard as well as their own ten tennents of the Custodial officers decalogue.

Plaintiff avers that his clearly established Constitutional rights were violated by the above mentioned officers under color of state law and are personally responsible for plaintiff's mental, physical and emotional injuries.

(..)

**PROOF OF SERVICE BY MAIL**
(CCP 1013, 2015.5 / FRCP 5, 18 USC 1621)

I the undersigned, certify and declare that I am a citizen of the United States and over the age of 18 years old. My name and address are the same as that appearing on the envelope. And that on _USC 1983_ I served a true and correct document entitled:

_Complaint under the Civil Rights Act Title 42 U.S.C § 1983_

Upon the office of counsel for respondent / the court, by personally placing said document in a sealed envelope with first class postage fully prepaid, delivered to prison officials for depositing in the United States Mailing system, properly addressed to:

_U.S. District Courthouse Clerk's Office_
_450 Golden Gate_

I declare under penalty of perjury under the laws of the State of California and United States that the foregoing is true and correct. Executed by me, on this the _4th_ day of _September_, 200_7_, at _H.D.S.P_, California.

/s/ [signature]