# Exhibit



Memorandum                                                    8/21/86

*Hand written copy of document sent to C.A.2 on Aug. 21, 2006*

TO: Correctional Administrator for Complex II

From: Inmate Woodson P-76095/D-2-127

RE: Appeal log Number S.V.S.P D-06-02482

    This Memorandum is to put C.A.2 on Notice that the above entitled appeal log # is an ICC issue of Adverse Transfer being erroneously, maliciously, and vindictavely recommended to Appellant on 7/20/06. The location also being punitive presented a significant Adverse Affect on Appellant and Appellant Appealed dec- ision per Title 15 Admin. Code 3084.1(a). CCII Meden's Arbitrary and Capricious witholding of Appellants 128 G chrono Committee action put a chilling effect on Appellants first Amendment Constitutional right to file a timely Appeal. Appellant was forced to proceed without it.

    The above appeal is not to be misconstrued with Subsequent Appeal Appellant filed on 8/16/06 on the actual endorsement. Appellant files this Appeal per. Title 15 Adm. Code 3084.7(d) to the particular. The two Appeals are relative, however they are not duplicate at all

Respectfully /s/ *[signature]*

P-76095

Memorandum                                    Hand written Copy

Date: August 27, 2006

To: Cheif Disciplinary officer M. Moore

RE: Eloy Medina CCII Appeals Coordinator's failure or refusal to respond to 602 screen out sheet response from Appellant sent 8/03/06 to his office.

     Appellant re-allege and re-incorporate section A, of this Appeal. Putting you on notice that CCII E. Medina has arbitrarily and adversarially deprived Appellant of his procedural safeguard, putting a "chilling effect" on Appellants first Amendment Constitutional right to rebuttal a CDCR-695 form. Appellant received a returned 602 with CDCR-695 form attached to it August. 16, 2006. The CDCR-695 form states that Appellant has 15 working days to clarify or respond to the screening action. Appellant timely responded in 5 working days. Appellant sent 602 and CDCR-695 form with all supporting documents back to Appeals coordinator E. Medina who in turn returned the documents to Appellant with no response other than a delivered stamp August 25, 2006. This arbitrary Administrative action demonstrated by Eloy Medina has no legitimate penalogical purpose, and displays deliberate indifference, thus violating Appellants right to appeal any departmental decision, action, condition or policy which demonstrates having an adverse affect upon Appellants welfare per. T.15 Admin Code 3084.1(a). Appellant exorcizing his first Amendment and Administrative right to file an appeal is "protected conduct" and should not be attacked, stricken, or obstructed in any way, for any reason.

Respectfully b/ Thomas Moore P Korr

Memorandum

Date: 9/6/06

TO: Warden

RE: CC II Medina Appeals Coordinator

Warden, this is to put you on notice that CC II Eloy Medina refuses to Process I/m woodson's P-76095 Appeals. The Appeals are timely per 3084.6 (c) with legitimate purpose and viable questions and request to Arbitrary administrative actions, policies, decisions and procedures that affect I/m woodson P-76095 Adversely per. T.15 Admin. Code 3084.1 (a).

Respectfully (S) Thomas Woodson

Thomas Woodson



PRISON LAW OFFICE
General Delivery, San Quentin, CA 94964-0001
Telephone (415) 457-9144 • Fax (415) 457-9151
www.prisonlaw.com

Director:
Donald Specter

Staff Attorneys:
Susan Christian
Steven Fama
Rachel Farbiarz
Brittany Glidden
Penny Godbold
Megan Hagler
Alison Hardy
Millard Murphy
Sara Norman
Judith Rosenberg
Zoe Schonfeld
E. Ivan Trujillo

February 6, 2007

Re:  Request for Legal Assistance

Dear Sir or Madam:

We received your letter, asking for our help, information, or legal advice. Unfortunately, we cannot help you at this time. We receive many more requests than we can possibly handle. We must choose our cases very carefully to ensure that we use our limited resources in the most efficient way.

This means there are going to be many cases that have merit that we cannot pursue, and cases in which we cannot provide requested information or advice. This is unfortunate but necessary, given the large number of cases and requests we handle. We do not like the fact that we can't help everyone who writes. Please understand that our decision not to help does not necessarily mean that you do not have a real problem or worthy case. It is just that we can't help everybody who writes.

To help you determine whether your case is worth pursuing on your own, we have enclosed any self-help material that is relevant to your problem. If no material is enclosed, we do not have any helpful information. You may be able to find useful information in the California State Prisoners' Handbook (3rd Edition) published in 2001. Ask for the Handbook in the prison law library. If you want information on how to order a copy of the Handbook, write to us.

We are sorry that we cannot help you. We hope that in the future we will be able to expand our services to help more prisoners throughout California.

Sincerely,

Prison Law Office

Board of Directors
Penelope Cooper, President • Michele WalkinHawk, Vice President • Marshall Krause, Treasurer
Honorable John Burton • Felecia Gaston • Christiane Hipps • Margaret Johns
Cesar Lagleva • Laura Magnani • Michael Marcum • Ruth Morgan • Dennis Roberts

State of California

**INMATE / PAROLEE APPEAL SCREENING FORM**    Department of Corrections and Rehabilitation

CDCR-695

HDSP

INMATE: _Woodson_    CDC #: _P-76095_    CDC HOUSING: _D8-228_

THIS IS *NOT* AN APPEAL RESPONSE – THIS APPEAL IS EITHER REJECTED FOR ONE OR MORE REASONS NOTED BELOW OR RETURNED TO YOU TO ATTACH SUPPORTING DOCUMENTS.

<u>YOUR APPEAL IS BEING RETURNED TO YOU FOR THE FOLLOWING REASON(S):</u>

C8-113L

[ ] Duplicate Appeal; Same Issue

[ ] Do Not Combine Staff Complaints with Other Issues

[X] Time Constraints Not Met  12/26/06

[ ] Cannot Submit On Behalf Of another Inmate

[ ] No Significant Adverse Effect Demonstrated

[ ] Pointless Verbiage/Appeal is vague

[ ] Incomplete 602

[ ] Attempting to Change Original Appeal Issue

[ ] Not Authorized to Bypass Any Level

[ ] Request for Interview; Not an Appeal

[ ] Numerous and separate issues

[X] Limit of One Continuation Page May Be Attached

[ ] Inappropriate Statements

[ ] Action / Decision Not Taken By CDCR

[ ] DRB Decisions Are Not Appealable

[ ] Appealing Action Not Yet Taken

[ ] May Submit One (1) Non-Emergency Appeal Per Week

[ ] Not A Request Form; Use CDCR-7362 – to access Medical Services, submit your request on a CDCR-Form 7362. If necessary, sign up for sick call.

[ ] Write your appeal in black or blue ink, this is a legal document and pencil/inks other than black or blue do not copy legibly

**PLEASE FOLLOW INSTRUCTIONS AND <u>RETURN YOUR CDC 602 WITHIN 15 WORKING DAYS</u>**

**Comments:** **You may write on back of this form to clarify or respond to the above.**

• Time Constraints are not applicable here as Appellant has already explained in the body of the Appeal (first sentence) Appellant has been waiting to recieve the 128 G Chrono from the 7/20/06 Committee action over 2 months and 16 days after the actions. It is no fault of Appellants that the Appeal to this action comes now. As you know Appellant has sent numerous request to recieve this document prior to receiving it via institutional mail 10/5/06. The request have been sent to CCII meden and Appeals coordinator E. medina with due dilligence.

• Appellant has one Continuation page for section A of the 602 appeal as is required for that section. Appellant has an additional sheet for section B as Appellant could not fit all action requested in the space requested provided. Thank you.

_Eloy Medina, CC-II_
Appeals Coordinator

12/26/06
Reject as late

RET'D OCT 31 2006

Date: _10/11/06_

REC'D NOV 17 2006

This screening action may not be appealed. If you allege the above reason is inaccurate, then attach an explanation on a separate piece of paper, or use the back of this screen out – *do not write any more on the appeal itself.* Please return this form to the Appeals Coordinator with the necessary information attached.

PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE

RECEIVED

NOV 2 7 2006

AW/COMPLEX II

# INMATE APPEAL ROUTE SLIP

To: **CA2**                                    Date: November 20, 2006

From:  INMATE APPEALS OFFICE

Re: Appeal by Inmate WOODSON, P76095

3034

Please assign this appeal to appropriate staff for **INFORMAL** level response.

Appeal Issue:  CUSTODY/CLASS.

Due Date: **12/05/2006**

Special Needs:

STAFF INSTRUCTIONS:
Begin your response with: GRANTED, DENIED, PARTIALLY GRANTED or
WITHDRAWN.  When complete, return appeal to the inmate. Every effort should
be made to resolve the matter at the lowest level possible.

Refer to D.O.M. 54100 for instructions.

T. VARIZ, CC-II / E. MEDINA CC-II
Appeals Coordinators
Salinas Valley State Prison

NOV 2 8 2006

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region          Log No.                    Category   2
1. _____          1. _____                    CAU-1 ✓ 3034
2. _____          2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

ICC                                                                     7/26/06

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| Windson | P76095 |  | D-8-225 |

A. Describe Problem: On 10/5/06 Appellant received a CDC 128 G chrono for committee action of 7/20/06, Appellant has been requesting for this document for over 76 days. 76 days of delay Appellant Aver is an attempt to put a chilling effect on Appellants first Amendment right to file a prison grievance in this matter. Appellant contends with the dubious, misleading and arbitrary action/information contained in the document. In the committee's comments section of the document in paragraph 2, CCII Meden states, Appellants staff allegations were unfounded, Appellant was never given an investigative document stating this phantom conclusion that S.V.S.P is using as a pretext to involuntarily adverse transfer Appellant to punish Appellant for complaining of treatment violating federal statute and procedural policy (see Allah V. Seiverling
If you need more space, attach one additional sheet. 229 f 3d 220 (3d. circ. 2000).   See Attached Sheet

B. Action Requested: Appellant seeks Justice pursuant to the first Amendment and Equal Protection Clause of the fourteenth Amendment to the United States Constitution against S.V.S.P arbitrary and capricious administrative action in retaliation for Appellant exercising his first Amendment right to file a prison grievance against any departmental policy, action or decision that demonstrates an adverse Affect on Appellant (See Attached yellow Sheet)

Inmate/Parolee Signature: _Thomas Windson_    RECD OCT 11 2006  Date Submitted: 10/10/06

RECD DEC 08 2006

C. INFORMAL LEVEL (Date Received: 12/01/06 )

Staff Response: Partially Granted, You were seen by ICC on 11/30/06 & all of your concerns were addressed and you agreed with ICC's action.

DELIVERED

Staff Signature: _____    DELIVERED DEC 1 2006   Date Returned to Inmate: 12/01/06

RECD OCT 31 2006

MAR 01 2007

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.  RECD NOV 17 2006

Appellants issues were expressed, however, they were met with apparent deliberate indifference as Appellant put the ICC Committee panel on notice of the illegality of the retaliatory retention in A.S.U and the Adverse transfer that served no legitimate penological purpose, Cpt. B. Rankin told Appellant he didn't want to make it appear that they were retaliating against Appellant as he laughed with the rest of the panel.

Signature: _Thomas Windson_    RECD DEC 28 2006   Date Submitted: 12/24/06

Note: Property/Funds appeals must be accompanied by a completed          CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

Continued from Section A. of 602 :

(See Staff Complaint log # SVSP-C-06-00952 )

Appellant aver that the Transfer, involuntary and adverse is in retaliation for Appellant excercising his first Amendm- ent right to file a prison grievance and serves no legit- imate correctional goal. "The Prohibition against retali- atory Punishment is clearly established law in the United States Court of Appeals for the Ninth Cir- cuit, for qualified immunity purposes." (See Pratt V. Rowland 65 f. 3d 802 (1995) also Bruce V. ylst 351 f. 3d 1283)

In the committee's comments section of the document CCII meden also states Appellant had only 19p of disciplinary free beh- avior during the last annual period. Prior to 4/5/06 Appellant was effectively programming and had not received a CDC 115 since December of 05. Appellant has 39p of disciplinary free behavior since June 05. Appellants points should be adjusted by −4 of the present score.

In the third Paragraph of the committee comments section of the document CCII meden states, B. Martinez CCI was present and a S/A for Appellant during the time of this committee action. That is a false statement as well CCI Martinez was never present on 7/20/06 the date of this action. The comm- ittee members consisted of CCII meden, CCI Hererra, CDW(a) M. Moore, G. Lewis F.C., Dr. Torres psych services.

over →

Continued from Section B. of 602:

Appellant seeks re-classification and the Necessary Corrections made to the information A.S.A.P.

NAME: WOODSON     CDC #: P76095     BED: D-2-127L

## COMMITTEE ACTION SUMMARY

REFER CSR RX TX HDSP-IV(180)/SAC-IV(180) RETAIN ASU PENDING TRANSFER, CONTINUE MAX CUSTODY, WG/PG D1/D EFFECTIVE 4-11-06, W/A YARD, ADJUST PLACEMENT SCORE BY+4, 2X CELL, PSYCH CCCMS, S/A B. MARTINEZ, CCI.

## COMMITTEE'S COMMENTS

Inmate WOODSON appeared before Salinas Valley State Prison's (SVSP's) Administrative Segregation Unit (ASU) Institutional Classification Committee (ICC) today for his Annual/Program Review. WOODSON stated that his health was good and was willing to proceed. WOODSON received his 72-hour notice for the purpose of this review. Prior to committee reviewing and discussing this case, WOODSON was introduced to the committee members.

According to WOODSON'S CDC 114D, he was placed into SVSP's ASU on 4/11/2006 for: Investigation into Allegations of Staff Misconduct. ICC notes investigation into Allegations of Staff Misconduct has been completed , refer to 128B dated 7-11-06. Although the allegation of Staff misconduct were unfounded, ICC feels is best to transfer WOODSON to an alternate institution as the affected staff members are still employed at SVSP and due to the seriousness of the allegations, ICC elects to refer case to the CSR RX TX HDSP-IV(180)/SAC-IV(180). These institutions have been identified as suitable. This transfer is adverse in nature as WOODSON's actions caused the need for this transfer. Upon transfer he will be eligible for CLO B and WG/PG A2B. His housing remains appropriate due to 180 criteria (SHU term assessed during the last 3-years). This committee elects to address WOODSON's annual review. The review period is from 6-01-05 to 5-31-06. His placement score was adjusted by +4 due to 1QP of disciplinary free behavior, and 1 Serious CDC 115, and No QP's of favorable work performance. Double Cell is deemed appropriate as there is no history of in-cell violence or predatory behavior towards a cellmate. CDC forms 812-812C, 127, MCSF, and 840 reviewed and updated as needed.

Based upon a review of WOODSON'S CDC 114D, Central File, case factors, and through discussion with him, committee elects to: Refer CSR RX TX HDSP-IV(180)/SAC-IV(180) Retain ASU pending transfer, Continue MAX Custody, WG/PG D1/D effective 4-11-06, W/A Yard, Adjust Placement Score by+4, 2X Cell, Psych CCCMS, S/A B. Martinez, CCI. At the conclusion of this review, WOODSON was informed of his Appeal Rights with regards to this committee's actions. WOODSON acknowledged his understanding and agreement with committee's actions.

**STAFF ASSISTANT**

Assigned: (Issues complex and/or Inmate participant in MHSDS) SA Present: B. Martinez, CCI.

## INMATE CASE FACTORS

| CUSTODY | PS/LEVEL | WG/PG & EFF. DATE | RELEASE DATE | GPL | RECLASS | AGE | ETHNIC | TERMER | NEXT BPT & DATE |
|---|---|---|---|---|---|---|---|---|---|
| MAX | 74/IV | D1D - 4/11/2006 | EPRD 7/19/2015 | 12.9 (R) | 6/1/2007 | 35 | BLA | 1st | N/A |
| RECEIVED | RECEIVED FROM & TYPE OF TX | | RECEIVED CDC | COUNTY OF COMMITMENT | | SENTENCE | | | RESTITUTION |
| 3/27/2001 | CAL Adverse | | 4/11/2000 | Los Angeles | | 18 Years 4 Months | | | $10210.00 |

| COMMITMENT OFFENSE |
|---|
| Robbery 2nd, (2x) Assault w/Deadly Weapon, Poss Firearm by Ex-Felon, Terrorist Threats |
| Non Controlling case: Terrorist Threats, Possession Concealed Firearm, Robbery 2nd. |

| PRIOR ARREST HISTORY | DISCIPLINARY HISTORY |
|---|---|
| ADW (Not Firearm), Caring a Concealed Weapon in Public, Carrying a Concealed Weapon on Person, DUI, Inflicting Corporal Injury on Spouse/Cohab., Obstruct/Resist a Public Officer, Poss/Sale/Mfg of a Dangerous Weapon, Rape, Rape in Concert w/Force (Attempted), Domestic Violence, Fight/Challenge Fight public Place, Exhibit Firearm | Refusal to Comply,, Participation in a Riot, Threatening Staff |

| SEX OFFENSES | ARSON OFFENSES | ESCAPES |
|---|---|---|
| Clear as of 6/9/2005 | Clear as of 6/9/2005 | Clear as of 6/9/2005 |

| ENEMIES | GANG/TIP | CONFIDENTIAL |
|---|---|---|
| None | No Gang | Noted & Reviewed |

| MEDICAL | TB - DATE 128C | DENTAL | DPP | SUBSTANCE ABUSE |
|---|---|---|---|---|
| Full Duty 4/13/00 | 32 - 4/29/2006 | 2 | N/A | None |

| PSYCH | MDO | DDP |
|---|---|---|
| CCCMS | Doesn't Meet MDO Criteria | NCF |

| HOUSING | CELL STATUS | CAMP, MSF, CCF, SAP, CCRC, REST. CENTER, & MCCF ELIGIBILITY | | |
|---|---|---|---|---|
| 180 Design (A1) | Double Cell | Camp Eligible: No VIO - PLS | CCF Eligible: No VIO - PLS | CCRC Eligible: No VIO - PLS |
| | | MSF Eligible: No VIO - PLS | SAP Eligible: No VIO - PLS | Rest. Center Eligible: No VIO - PLS |
| | | MCCF Eligible: No VIO - PLS | | |

| FPTTP | HWD | JOB ASSIGNMENT |
|---|---|---|
| US Citizen | None | Unassigned |

## COMMITTEE MEMBERS

CHAIRPERSON          MEMBERS          RECORDER

                 G. Lewis, FC    Dr. Torres, Psych Services

M. Moore, CDW (A)                                    A. Meden, CCII

# CALIFORNIA DEPARTMENT OF CORRECTIONS

| NAME: WOODSON | CDC #: P76095 | BED: D-8-225L |
|---|---|---|

## COMMITTEE ACTION SUMMARY

REFER CSR RX TX CCI-IV (180) SAC-IV (180), RETAIN ASU PENDING CSR REVIEW AND TRANSFER, CONTINUE MAX CUSTODY, DID EFFECTIVE 4-11-06, DOUBLE CELL, PSYCH CCCMS, S/A I. HERRERA, CCI

## COMMITTEE'S COMMENTS

Inmate WOODSON appeared before Salinas Valley State Prison's (SVSP's) Administrative Segregation Unit (ASU) Institutional Classification Committee (ICC) today for his Program Review. WOODSON stated that his health was good and was willing to proceed. WOODSON received his 72-hour notice for the purpose of this review. Prior to committee reviewing and discussing this case, WOODSON was introduced to the committee members.

According to WOODSON'S CDC 114D; he was placed into SVSP's ASU on 4/11/2006 for Investigation into Allegations of Staff Misconduct (C YARD CASE). The allegations were not substantiated, however due to the seriousness of the allegations, ICC referred this case for transfer. ICC notes active CSR endorsement dated 8-9-06 to HDSP-IV (180) which will expire on 12-09-06. ICC notes that WOODSON requested to be transferred to an institution closer to the Los Angeles are to promote family ties. ICC therefore recommends to rescind the HDSP-IV transfer and endorse to CCI-IV (180)/SAC-IV (180) noting that this transfer is non-adverse in nature. Upon transfer he will be eligible for CLO B and WG/PG A2B. Double Cell is deemed appropriate as there is no history of in-cell violence or predatory behavior towards a cellmate. CDC forms 812-812C, 127, MCSF and 840 reviewed and updated as needed.

Based upon a review of WOODSON'S CDC 114D, Central File, case factors, and through discussion with him, committee elects to: Refer CSR RX TX CCI-IV (180)/ SAC-IV (180), Retain ASU pending CSR review and transfer, Continue MAX custody, DID effective 4-11-06, Double Cell, Psych CCCMS, S/A I. Herrera, CCI. At the conclusion of this review, WOODSON was informed of his Appeal Rights with regards to this committee's actions, WOODSON acknowledged his understanding and agreement with committee's actions.

STAFF ASSISTANT:
Assigned: (Issues complex and/or inmate participant in MHSDS) SA Present: I. Herrera, CCI

## INMATE CASE FACTORS

| CUSTODY | PS/LEVEL | WG/PG & EFF. DATE | RELEASE DATE | GPL | RECLASS | AGE | ETHNIC | TERMER | NEXT BPT & DATE |
|---|---|---|---|---|---|---|---|---|---|
| MAX | 78/IV | D1D - 4/11/2006 | EPRD 7/19/2015 | 12.9 (R) | 6/1/2007 | 35 | BLA | 1st | N/A |

| RECEIVED | RECEIVED FROM & TYPE OF TX | RECEIVED CDC | COUNTY OF COMMITMENT | SENTENCE | RESTITUTION |
|---|---|---|---|---|---|
| 3/27/2001 | CAL/Adverse | 4/11/2000 | Los Angeles | 18 Years 4 Months | $10210.00 |

### COMMITMENT OFFENSE
Robbery 2nd, (2X) Assault w/Deadly Weapon, Poss Firearm by Ex-Felon, Terrorist Threats, Non-Controlling case: Terrorist Threats, Possession-Concealed Firearm, Robbery 2nd

| PRIOR ARREST HISTORY | DISCIPLINARY HISTORY |
|---|---|
| (Not Firearm), Caring a Concealed Weapon in Public, Carrying a Concealed Weapon on Person, DUI, Inflicting Corporal Injury on Spouse/Cohab, ruct/Resist a Public Officer, Poss/Sale/Mfg of a Dangerous Weapon, Rape in Concert w/Force (Attempted), Domestic Violence, Fight/Challenge Fight public Place, Exhibit Firearm | Refusal to Comply, Participation in a Riot, Threatening Staff |

| SEX OFFENSES | ARSON OFFENSES | ESCAPES |
|---|---|---|
| Clear as of 6/9/2005 | Clear as of 6/9/2005 | Clear as of 6/9/2005 |

| ENEMIES | GANG/TRIAD | CONFIDENTIAL |
|---|---|---|
| None | No Gang | Noted & Reviewed |

| MEDICAL | TB (DATE 1280) | DENTAL | DPR | SUBSTANCE ABUSE |
|---|---|---|---|---|
| Full Duty 4/13/001 | 4/29/2006 | 2 | N/A | None |

| PSYCH | MDO | DDP |
|---|---|---|
| CCCMS | Doesn't Meet MDO Criteria | NCF |

| HOUSING | CELL STATUS | CAMP, MSF, CCF, SAP, CCRC, REST. CENTER & MCCF ELIGIBILITY | | |
|---|---|---|---|---|
| 180 Design (A1) | Double Cell | Camp Eligible: No VIO - PLS | CCF Eligible: No VIO - PLS | CCRC Eligible: No VIO - PLS |
| | | MSF Eligible: No VIO - PLS | SAP Eligible: No VIO - PLS | Rest. Center Eligible: No VIO - PLS |
| | | MCCR Eligible: No VIO - PLS | | |

| FPTTP | HWD | JOB ASSIGNMENT |
|---|---|---|
| US Citizen | None | Unassigned |

## COMMITTEE MEMBERS

| CHAIRPERSON | MEMBERS | RECORDER |
|---|---|---|
| | B. Rankin, FC    Dr. Goldstein, Mental Health | |
| L. Trexler, CDW (A) | | A. Meden, CCII (Sup) |

Committee Date: 11/30/2006          **PROGRAM REVIEW**          Committee: ICC

INMATE / PAROLEE APPEAL SCREENING FORM

NMATE: __Woodson__    CDC #: __P-76095__    CDC HOUSING: __D2-127__

THIS IS *NOT* AN APPEAL RESPONSE – THIS APPEAL IS EITHER REJECTED FOR ONE OR MORE REASONS NOTED BELOW OR
RETURNED TO YOU TO ATTACH SUPPORTING DOCUMENTS.

## YOUR APPEAL IS BEING RETURNED TO YOU FOR THE FOLLOWING REASON(S):

[✓] Duplicate Appeal; Same Issue

[ ] Do Not Combine Staff Complaints with Other Issues

[ ] Time Constraints Not Met

[ ] Cannot Submit On Behalf Of another Inmate

[ ] No Significant Adverse Effect Demonstrated

[ ] Pointless Verbiage/Appeal is vague

[ ] Incomplete 602

[ ] Attempting to Change Original Appeal Issue

[ ] Not Authorized to Bypass Any Level

[ ] Request for Interview; Not an Appeal

[ ] Numerous and separate issues

[ ] Limit of One Continuation Page May Be Attached

[ ] Inappropriate Statements

[ ] Action / Decision Not Taken By CDCR

[ ] DRB Decisions Are Not Appealable

[ ] Appealing Action Not Yet Taken

[ ] May Submit One (1) Non-Emergency Appeal Per Week

[ ] Not A Request Form; Use CDCR-7362 – to access Medical
    Services, submit your request on a CDCR-Form 7362.
    If necessary, sign up for sick call.

[ ] Write your appeal in black or blue ink, this is a legal
    document and pencil/inks other than black or blue do
    not copy legibly

## PLEASE FOLLOW INSTRUCTIONS AND RETURN YOUR CDC 602 WITHIN 15 WORKING DAYS

Comments:   You may write on back of this form to clarify or respond to the above.

06-2482. Both are transfer appeals (this
Appeal : 06-2482).

_____
by Medina, CC-II
peals Coordinator

Date: __9/13/06__

s screening action may not be appealed.  If you allege the above reason is inaccurate, then attach an explanation
a separate piece of paper, or use the back of this screen out – *do not write any more on the appeal itself.* Please
rn this form to the Appeals Coordinator with the necessary information attached.

State of California

**INMATE / PAROLEE APPEAL SCREENING FORM**

Department of Corrections and Rehabilitation

CDCR-695

INMATE: __Woodson__   CDC #: __P-76095__   CDC HOUSING: __D2-127__

THIS IS *NOT* AN APPEAL RESPONSE – THIS APPEAL IS EITHER REJECTED FOR ONE OR MORE REASONS NOTED BELOW OR
RETURNED TO YOU TO ATTACH SUPPORTING DOCUMENTS.

## YOUR APPEAL IS BEING RETURNED TO YOU FOR THE FOLLOWING REASON(S):

[X] Duplicate Appeal; Same Issue

[ ] Do Not Combine Staff Complaints with Other Issues

[ ] Time Constraints Not Met

[ ] Cannot Submit On Behalf Of another Inmate

[ ] No Significant Adverse Effect Demonstrated

[ ] Pointless Verbiage/Appeal is vague

[ ] Incomplete 602

[ ] Attempting to Change Original Appeal Issue

[ ] Not Authorized to Bypass Any Level

[ ] Request for Interview; Not an Appeal

[ ] Numerous and separate issues

[ ] Limit of One Continuation Page May Be Attached

[ ] Inappropriate Statements

[ ] Action / Decision Not Taken By CDCR

[ ] DRB Decisions Are Not Appealable

[ ] Appealing Action Not Yet Taken

[ ] May Submit One (1) Non-Emergency Appeal Per Week

[ ] Not A Request Form; Use CDCR-7362 – to access Medical
Services, submit your request on a CDCR-Form 7362.
If necessary, sign up for sick call.

[ ] Write your appeal in black or blue ink, this is a legal
document and pencil/inks other than black or blue do
not copy legibly

## PLEASE FOLLOW INSTRUCTIONS AND RETURN YOUR CDC 602 WITHIN 15 WORKING DAYS

Comments:  You may write on back of this form to clarify or respond to the above.

06-2482. Both are transfer appeals (this
Appeal : 06-2482).

~~Eloy Medina, CC-II~~ Eloy Medina, CC-II
Appeals Coordinator

Date: __9/13/06__

This screening action may not be appealed.  If you allege the above reason is inaccurate, then attach an explanation
on a separate piece of paper, or use the back of this screen out – *do not write any more on the appeal itself.*  Please
return this form to the Appeals Coordinator with the necessary information attached.

**PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE**

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region    Log No.    Category    _15_

1. _____    1. _____

2. _____    2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

*TX                    retaliatory TX/HDSP factor*

| NAME           | NUMBER  | ASSIGNMENT | UNIT/ROOM NUMBER |
|----------------|---------|------------|------------------|
| *Woodson, T.*  | *P-76095* |          | *D-2-127*        |

A. Describe Problem: *Title 15 Admin. Code 3084.7(d) Transfer Appeal : On 8/15/06 Appellant received a Classification Staff Representative endorsement to H.D.S.P. effective Date 8/9/06. Appellant has informed ICC member CCII meden who proposed the recommendation in front of chairpersons on 7/30/06 that there are several mitigating factors as to Appellants opposition to this endorsement. Appellant objects to being adversely transferred unduly. Appellant meets no criteria for adverse transfer as defined in Title 15 Admin. Code 3043.6 (c)(1) "Adverse Transfers", 3375 (F) "Involuntary Transfer..." Appellants placement in ASU was based on a non-disciplinary 30 day stay pending an investigation into Appellants Allegations of Staff misconduct (assault) on 602 Appeal log# SVSP-C-06-00952. Investigation/inquiry was completed*

If you need more space, attach one additional sheet.

*On 4/25/06 with appeal being "partially granted." (See Attached)*

B. Action Requested: ~~_____ endorsement _____~~ *to Corcoran state Prison or Tehachepi State Prison as viable alternatives to be transfered to for Appellant and family. The transfer should be now Adverse and the retaliatory action to cease as staff misconduct complaint should not be taken as adversarial by S.V.S.P. Administration, Per Title 15 Admin. Code 3084.1(d), first Amendment Const. U.S.*

Inmate/Parolee Signature: *Thomas Woodson*

RECEIVED AUG 30 2006    RECD AUG 17 2006

Date Submitted: *8/16/06*

C. INFORMAL LEVEL (Date Received: _____ )    RETD AUG 29 2006

DELIVERED SEP 20 2006
DJ\ DELIVERED SEP 20 2006

Staff Response: _____

_____

_____

_____

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

Signature: _____    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

Continued from Section A of 602:

However Appellant was never released to General Population In lieu Appellant was illegally retained in A.S.U and subsequently given A Second CDC 114D lock up order on 7/3/06 pending Adverse Transfer.

Appellant asserts that the transfer endorsement to H.D.S.P retaliatory per. Title 15 Admin. Code 3084.1(d) "Reprisal," for excersizing Appellants first Amendment Constitutional right to file prison grievance per Title 15 Admin. Code 3084.1; "Right to Appeal," Also See Austin V. Terhune 367 F. 3d 1167, (C.A.9 (Cal.) 2004. Appellant Asserts that the endorsement transfer serves no legitimate penological purpose or Correctional goals and places a significant Adverse Effect on Appellant. Appellant is from Southern California, to transfer Appellant further up north places an unusual hardship on Appellants family and Children who Consult Appellant for Moral and Spiritual Support and upliftment, as well as Conflict resolution to Various Vicissitudes of life. See Title 15 Admin. Code 3375.2 (Fam)(b)(10). It is already difficult to regulate family function from present location.

Appellant has put CCII meden and ICC Chair persons on Notice of Safety and Security Concern with endorsement to H.D.S.P Appellant ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and does Not desire to jeopardize that Persons employment integrity, nor jeopardize Appellants health and Safety by encountering this individual (Past private domestic matters). T.15 Admin. Code 3406

Appellant asserts that adverse endorsement transfer to H.D.S.P is An arbitrary Administrative action in retaliation for reporting misc-

memorandum

Date: 8/21/06

To: Correctional Administrator for Complex II (CA2)

From: I/m woodson P-76095

RE: Appeal log number SVSP D-06-02482

    This Memorandum is to put CA2 on Notice that the above entitled appeal log # is an ICC Action issue recommending Adverse Transfer erroneously, maliciously, and vindictively to Appellant on 7/20/06. The location also being punitive presented a significant adverse affect on Appellant and Appellant appealed the decision per Title 15 Administrative Code 3084.1 (a). Appellant was forced to proceed with filing an appeal without a 128 G chrono of the Committee action being furnished. CC II medens arbitrary and capricious witholding of Appellants 128 G chrono put a "chilling effect" on Appellants first Amendment constitutional right to file a timely appeal.

    The above appeal is not to be misconstrued with subsequent appeal Appellant filed on 8/16/06 on the actual endorsement. Appellant files this appeal per Title 15 administrative Code 3084.7 (d) to the letter. The two appeals are relative, however they are NOT duplicate at all.

Respectfully /s/ ⟨signature⟩ Maurice D. Woodson P-76085

Handwritten Copy of Document sent to CA2 8/21/06



# *Superior Court of California*
# *County of Monterey*

TO: Thomas R. Woodson

FROM: S Garside

DATE: 1/8/07

RE: Transfer Complaint

---

Dear Mr. Woodson,

We were unable to locate a Habeas Corpus file under your name. If you would please provide a file number, we could better assist you.

Sincerely,

Sarah Garside
Court Clerk II

Thomas R. Woodson P-76095, C-8-113
High Desert State Prison
P.O. Box 3030 Susanville CA 96127

JAN 0 4 2007

Dec. 28, 2006

To: Marla O'Anderson  Superior Court Judge for the County of
Monterey

RE: Retaliatory Transfer from S.V.S.P to H.D.S.P / Legal mail

Dear Judge Anderson, Salinas Valley has now made good on
efforts to severely punish me for excercising my right to file a prison
Grievance Complaint in protest of unfair and arbitrary administr-
ative action having an adverse affect on me. It is my protected
Right under the U.S. Const. Amend. I., to do so and a Violation of
'Clearly established federal law' to retaliate for excercising such
Conduct (see Pratt V. Rowland 65 f. 3d). I pray for your help in
this matter as I have been transfered to this God forsaken NO
Mans land over 500 miles away from my family and loved ones.
Property and legal materials being held or thrown away by the Klan
who run this place. Every request for Necessary accomodations (essentials)
go ignored with extreme Prejudice. I have sent a petition to your
Court regarding this A·Typical and Significant hardship on Dec. 25, 2006.
I am Now at the above address Please send legal responses there
until this punitive and illegal measure Serving no legitimate Penalogical
Purpose is rectified, hopefully Soon.
                                    Respectfully /s/ Thomas Woodson

1

2

3

SUPERIOR COURT OF CALIFORNIA

COUNTY OF MONTEREY

**FILED**

JUN 2 0 2007

LISA M. GALDOS
CLERK OF THE SUPERIOR COURT
................DEPUTY

S. GARSIDE

4

5

6

7

In re

      Thomas Woodson

         On Habeas Corpus.

)
)
)
)
)
)
)

Case No.: HC 5698
ORDER

8

    Petitioner filed a petition for writ of habeas corpus.

9

    Petitioner is currently incarcerated at High Desert State Prison in Susanville.

10

    Petitioner claims that on March 23, 2006, several Salinas Valley State Prison (SVSP)

11

officials used excessive force. He submitted an appeal, alleging staff misconduct (Appeal No.

12

SVSP-C-06-00952.) On or about April 11, 2006, Petitioner was placed in the Administrative

13

Segregation Unit pending an investigation of the March 23, 2006 incident. On or about July 20,

14

2006, the Institution Classification Committee (ICC) recommended an adverse transfer to High

15

Desert State Prison. Subsequently, Petitioner was transferred to High Desert State Prison.

16

    Petitioner challenges the prison officials' decision to transfer him to High Desert State

17

Prison. He claims that he should be transferred to California Correctional Institution which is

18

located closer to his family.

19

    Petitioner has failed to show that he exhausted his administrative remedies. See *In re*

20

*Muszalski* (1975) 52 Cal.App.3d 500, 508.

21

    Petitioner appears to claim that in his appeal, SVSP-D-06-02482, he challenged the ICC's

22

decision to transfer him to High Desert State Prison. However, Petitioner failed to provide a

23

copy of the appeal, SVSP-D-06-02482. See *People v.* Duvall (1995) 9 Cal.4th 464, 474 [The

24

petition should include reasonably available documentary evidence.] Moreover, Petitioner failed

25

to show he submitted his appeal through the Director's level. A copy of the Inmate Appeal

1

1   Assignment Notice dated September 20, 2006 shows that the second level response for the

2   appeal (SVSP-D-06-02482) regarding "transfer" was due October 16, 2006.  Petitioner does not

3   explain whether he received a second level response, and does not provide a copy of the second

4   level response.  He also fails to explain whether he submitted his appeal to the Director

5   thereafter.

6          To the extent that Petitioner is claiming that his appeal dated August 16, 2006 was

7   improperly rejected, Petitioner has failed to meet his burden of showing that the appeal was

8   improperly rejected.  His appeal dated August 16, 2006 was rejected on the ground that his

9   appeal dated August 16, 2006 was a duplicate appeal of his appeal, SVSP-D-06-02482.

10  Petitioner argues that these two appeals are not duplicates.  He argues that his appeal, SVSP-D-

11  06-02482, concerned the ICC's decision to transfer him to High Desert State Prison whereas his

12  appeal dated August 16, 2006 concerned the classification staff representative's endorsement of

13  the transfer to High Desert State Prison.  Petitioner's argument that the two appeals are not

14  duplicates is not persuasive because both appeals concerned Petitioner's challenge of the prison

15  officials' decision to transfer him to High Desert State Prison.  Thus, Petitioner's appeal dated

16  August 16, 2006 was properly rejected.

17         In light of the foregoing, the petition is denied.

18         IT IS SO ORDERED.

19  Dated: 6-20-07

20

21         _____

22         Hon. Jonathan R. Price
           Judge of the Superior Court

23

24

25

2

## CERTIFICATE OF MAILING

### C.C.P. SEC. 1013a

I do hereby certify that I am not a party to the within stated cause and that on

_____**JUN 2 1 2007**_____ I deposited true and correct copies of the following document:

ORDER in sealed envelopes with postage thereon fully prepaid, in the mail at Salinas,

California, directed to each of the following named persons at their respective addresses

as hereinafter set forth:

Thomas Woodson (P-76095)
High Desert State Prison
PO Box 3030 (C-8-113)
Susanville, CA 96127

Dated: ___**JUN 2 1 2007**___

LISA M. GALDOS,
Clerk of the Court

By_____
   Deputy    S. GARSIDE

Stat  of California                                    Department of Corrections and Rehabilitation
                                                                    High Desert State Prison

# Memorandum

Date  :  April 30, 2007

To    :  Inmate Woodson, P-76095
         FCB8-113

Subject:  **APPEAL LOG # HDSP-C-07-01074**
          **SECOND LEVEL RESPONSE**

APPEAL DECISION:  Partially Granted.

APPEAL ISSUE:  You state that you arrived at High Desert State Prison (HDSP) from Salinas Valley State Prison (SVSP) on December 27, 2006.  On January 8, 2007, you filed this appeal requesting that your seven boxes  personal property be issued to you.

APPEAL RESPONSE:  Inmate Woodson, in reaching a decision on your appeal, your CDCR 602 and its attachments, applicable sections of the California Code of Regulations (CCR) Title 15, the Department Operations Manual, and your interview with Sergeant D. Park were all reviewed and considered.

A review of the HDSP list of "Inmates With Test of Adult Basic Education (TABE) Reading Scores of 4.0 or Less" indicates that you have a Reading Grade Point Level (RGPL) above 4.0.  A review of the HDSP "Assistive Device Listing" reveals that you have no disabilities requiring special accommodation to achieve effective communication.    Effective communication was achieved during your oral interview using normal conversational tones, your personal interaction with the interviewer, and the detail with which you were able to restate the discussion in your own words.

Upon review of your appeal, it was noted that your appeal was partially granted at the Informal Level on January 30, 2007.  Associate Warden D. L. Runnels partially granted your appeal at the First Level on April 11, 2007.

During the interview with Sergeant D. Park, you were given the opportunity to provide additional information or written material pertinent to your appeal.  You reiterated the points of your written appeal, and stated that you had received two boxes of property but were still missing five boxes.

In section "F" of your appeal you state that you have received correspondence from SVSP indicating that your other property has been located and will be sent to HDSP as soon as possible.  You are requesting that this property be given to you without delay.

Second Level Appeal, HDSP-C-07-01074
Inmate Woodson, P-76095
Page 2

A thorough inspection of Receiving and Release records indicates that as of March 30, 2007, HDSP has not received any more property for you from SVSP.  If/when HDSP receives additional property for you; it will be issued to you expeditiously.

Based on the foregoing, your appeal is considered partially granted at this level.

You are advised that if you are dissatisfied with this decision, you may appeal to the Director's Level by following the information located on the back of this CDCR 602 form.

M. D. McDONALD
Chief Deputy Warden

c:    Central File
      Appeal File

STATE OF CALIFORNIA
**PROPERTY TRANSFER RECEIPT**
CBC 143 (Rev 2/00)

DEPARTMENT OF CORRECTIONS

SENDING INSTITUTION/FACILITY

NORTH KERN STATE PRISON

DESTINATION

HDSP

SCHEDULE

J

| Inmate's Name | CDC Number | Number of Personal Property Boxes (6 cu ft Limit) | Television (Boxed) | Musical Instrument (If Boxed Separately) | Number of Active Legal Case Boxes | Total Number of Boxes |
|---|---|---|---|---|---|---|
| HILL | K73698 | 1 Bx | | | | |
| MULDREW | P85826 | 2 Bx | | | | |
| MALDONADO | H95232 | 1 Bx | 1. | | | 2 |
| WOODSON | P76095 | 2 Bx | | | | |
| HENDERSON | D58455 | 4 Bx. | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| TOTAL | | | | | | |

| I HEREBY ACKNOWLEDGE THE ACCURACY OF THIS DOCUMENT | SIGNATURE | PRINTED NAME WAYMIRE | DATE 12-27-06 |
|---|---|---|---|

**TRANSPORTATION**

| I HEREBY ACKNOWLEDGE THE RECEIPT OF THE ABOVE PROPERTY | SIGNATURE | PRINTED NAME J Williams | DATE 12-27-06 |
|---|---|---|---|

**ENROUTE TRANSPORTATION**

| I HEREBY ACKNOWLEDGE THE RECEIPT OF THE ABOVE PROPERTY | SIGNATURE | PRINTED NAME | DATE |
|---|---|---|---|

**RECEIVING INSTITUTION/FACILITY**

| I HEREBY ACKNOWLEDGE THE RECEIPT OF THE ABOVE PROPERTY | SIGNATURE | PRINTED NAME R TETER | DATE 12/27/06 |
|---|---|---|---|

DISTRIBUTION: Original: Sending Institution/Facility; Canary: Transportation Officer; Pink: Enroute Transportation Officer; Goldenrod: Receiving Institution/Facility

| DATE | ITEMS EXCHANGED/CONFISCATED SERIAL# | DISPOSITION Donate or Mail Out | OFFICER SIGNATURE | INMATE SIGNATURE |
|------|------|------|------|------|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| DATE | INMATE SIGNATURE | TYPE PROPERTY _ WHEN REC'D BY R&R _ C/O ISSUING |
|------|------|------|
| 3 | _James Nixon_ | 2 Boxes PP |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Continued from section A. of 602

Article 9 Personal property provisions of Title 15 Admin. codes 3190, 3191 and 3194 are being deprived Appellant with NO legitimate penalogical purpose and does NOT afford Appellant his procedural safegaurds or conditions per institutional policy.

Thurm Wooten
Appellant    1/8/07

DEPARTMENT OF CORRECTIONS

INMATE...
CDC 1083 Rev (2/00)

| INMATE'S NAME | CDC NUMBER | PRIVILEGE GROUP | INSTITUTION | DATE |
|---|---|---|---|---|
| WOODSON | P 76095 | | SVSP | 4-11-06 |

| PROPERTY INVENTORED BY | TITLE | REASON FOR INVENTORY | NUMBER OF BOXES |
|---|---|---|---|
| Blevins | 40 | AdSeg Placement | 4 + T.V. |

## CANTEEN ITEMS
- [x] Cereal
- [ ] Cheese
- [ ] Cocoa
- [ ] Cookies
- [ ] Crackers
- [ ] Creamer
- [ ] Dry Meat
- [ ] Dry Drink Mix
- [ ] Health Food
- [ ] Protein Supplement
- [ ] Vitamins
- [ ] Soup
- [ ] Nuts
- [x] Sugar Cubes
- [ ] Tea
- [x] Instant Coffee
- [ ] Soda
- [x] Peanut Butter
- [ ] Jelly
- [ ] Chips
- [ ] Honey
- [ ] Pork Rinds
- [ ] Hot Sauce
- [ ]

### Stationary Items
- [x] Envelopes
- [ ] Stamps
- [x] Stamped Envelopes
- [ ] Greeting Cards
- [x] Writing Tablets
- [ ] Stationary
- [ ] Pencil Sharpener
- [ ] Pens
- [x] Writing Paper
- [ ] Pencils

### Hygiene Items
- [ ] Razor
- [ ] Tweezers
- [ ] Shaving Cream
- [ ] After Shave
- [ ] Nail Clippers
- [ ] Nail Polish
- [x] Soap
- [x] Soap Dish
- [x] Toothpaste
- [x] Mouthwash
- [x] Baby Powder
- [ ] Talc
- [x] Shampoo
- [ ] Conditioner
- [ ] Hair Grease/Gel
- [x] Deodorant
- [ ] Perm Kit
- [ ] Mirror
- [ ] Nail Polish
- [ ] Foundation
- [ ] Makeup Bail
- [ ] Blush
- [ ] Mascara
- [x] Other Baby oil

### Tobacco Items
- [ ] Pipe Tobacco
- [x] Chewing Tobacco
- [ ] Other Tobacco
- [ ] Cigarette Lighter
- [ ] Tobacco Pouch
- [ ] Cigarette Case
- [ ] Cigarette Roller
- [ ] Smoking Pipe

### Other Items
- [ ] Immersion Heater
- [x] Tumbler
- [x] Bowl
- [ ] Can Opener
- [ ] Shoe Polish
- [ ] Extension Cord
- [x] Batteries  Size: ___

## PERSONAL ITEMS
- [x] Photo Albums
- [x] Photos
- [x] Cassette Tapes
- [ ] CDs
- [ ] Religious Medallion
- [ ] Ring G S
- [ ] Chain G S
- [ ] Earrings G S
- [x] Watch G S Fresh
- [ ] Wallet
- [ ] Prescription Glasses
- [ ] Sunglasses
- [ ] Handkerchief
- [ ] Wash Cloth
- [x] Magazines
- [x] Books
- [ ] Address Book
- [ ] Calendar
- [ ] Shoe Horn
- [ ] Shaving Bag
- [ ] Brush
- [ ] Comb
- [ ] Cosmetic Bag
- [ ] Perm Rods

### Clothing Items
- [ ] B/B Hat
- [x] Watch Cap
- [ ] Head Band
- [ ] Gloves
- [ ] Shower Thongs
- [ ] Slippers
- [ ] Sweat Pants
- [x] Sweat Shirt
- [ ] Tennis Shoes
- [ ] Raincoat
- [x] Thermal Top
- [ ] Thermal Pants
- [ ] Bras
- [ ] Panties
- [ ] Gym Shorts
- [ ] Athletic Supporter
- [ ] Slip

### Games
- [ ] Chess
- [ ] Checkers
- [ ] Dominoes

### Other
(1) Religous Rug
Legal papers
Koss Headphones
Hot Pot

### Hobby Items
_____

## NON-EXPENDABLE ITEMS
- [x] Televisions
- [ ] A/C Adapter

Operational [x] Yes [ ] No

Model: Zenith
SR/N: 1058

- [ ] CD/Cassette Player
- [ ] A/C Adapter

Operational [ ] Yes [ ] No

Model: _____
SR/N: _____

- [x] Radio
- [ ] A/C Adapter

Operational [x] Yes [ ] No

Model: GE Superadio
SR/N: 8579

- [x] Musical Instruments  cassette player

Operational [x] Yes [ ] No

Type: Pancisnic Tape player
Model: RQ-U25
SR/N: _____

- [ ] Typewriter

Operational [ ] Yes [ ] No

Model: _____
SR/N: _____

- [ ] Fan

Model: _____

- [ ] Lamp
- [ ] Electric Shaver
- [ ] Blow Dryer
- [ ] Hair Dryer
- [ ] Curling Iron
- [ ] Hair Rollers
- [ ] Pressing Comb
- [ ] Calculator

All nonoperational items shall either be repaired, sent home, or disposed of. Note disposition of the item below:

_____

| Inmate's Signature Noting Disposition | Date |
|---|---|

| TO BE SIGNED UPON INVENTORY OF THE INMATE'S PROPERTY | TO BE SIGNED UPON RETURN TO THE INMATE |
|---|---|
| The above listed items constitute all of my personal property which I am authorized to retain. | I have received all the above listed personal property or have noted any discrepancies below: |
| INMATE'S SIGNATURE: Thomas Woodson  DATE: 4-11-6 | INMATE'S SIGNATURE:                DATE: |
| RECEIVED IN R&R BY:      INSTITUTION      DATE | |

# APPEALS SCREENING FORM

TO: _Woodson_     _P-76095_     _CB-113L_

NAME          CDC NUMBER          HOUSING

**PER CCR TITLE 15 SECTION 3084.3, SCREENING APPEALS**

☐ **1. The action or decision being appealed is not within the jurisdiction of the department.** Per CCR 3084.3(c)(1)
    ☐ Submit BPT-1040 directly to the Records Office.
    ☐ Submit directly to your Parole Region.

☐ **2. You have submitted a duplicate appeal containing the same issue.** Per CCR 3084.3(c)(2)
    ☐ Your first appeal is currently under review at the _____ level.    Log # _____.
    ☐ Your first appeal has been completed at the _____ level.    Log # _____.
    ☐ Your first appeal was screened-out and returned to you with instructions.

☐ **3. The appeal concerns an anticipated action or decision.** Per CCR 3084.3(c)(3)

☐ **4. You have not attempted to resolve the grievance at the informal level.** [Per CCR 3084.3(c)(4)]
    **Obtain an informal response by sending your appeal directly to:**
    ☐ The Property Officer (R&R)    ☐ The Staff member(s) You Refer To _____    ☐ The Clothing Room
    ☐ Your Counselor    ☐ Unit Staff    ☐ Food Services
    ☐ Inmate Assignment    ☐ Trust Office    ☐ The Mailroom
    ☐ The Medical Department    ☐ Other _____ .    ☐ Records Office

☑ **5. The appeal is incomplete or necessary supporting documents are not attached.** *(If necessary, you may obtain copy(ies) of requested documents by sending your request with a signed trust withdrawal form to the Records Office.)* Per CCR 3084.3(c)(5)
    ☐ CDCR 115 Hearing Officer's results and Supplemental Reports (entire completed 115.)    ☐ CDCR 128G ICC/UCC/CSR
    ☐ CDCR 839/840 Class/Reclass Score Sheet    ☐ CDCR 114D Lock Up Order
    ☐ Attach copy of CDCR-1819 (Notice of Disallowed Mail Form)
    ☐ Complete/Sign/Date the CDCR-602 section(s) _____ return to ☐ appeal's office    ☐ see above.
    ☐ Remove excess attachments and attach only (1) additional written page (front and back), per DOM 54100.
    ☐ Receipts: ☑ CDCR 143 Prop Transfer Receipt    ☐ Cell Search Slip    ☑ CDCR-1083    ☐ _____

☐ **6. 15-Day Time limit for submitting the appeal is exceeded and the appellant had the opportunity to file within the prescribed time constraints.** Per CCR 3084.6(c) and 3084.3(c)(6) _____ / _____ .

☐ **7. The appeal is filed on behalf of another inmate or parolee.** Per CCR 3084.3(c)(7)

☐ **8. Abuse of the Appeal Process:**
    ☐ Inappropriate Statements. An appeal containing false information, profanity, slanderous or obscene language shall be rejected, per California Code of Regulations CCR 3084.4(b) & DOM 54100.7.
    ☐ Excessive Verbiage. Appeal cannot be understood or is obscured by pointless verbiage or voluminous unrelated documentation, per CCR 3084.4(c).
    ☐ Lack of cooperation. Refusal to interview or cooperate with reviewer shall result in cancellation of the appeal, per CCR 3084.4(d):
       ☐ Failure to sign CDCR-1858 as required
       ☐ Failure to return a completed copy of CDCR-115 as requested
       ☐ Failure to return signed and dated CDCR-602 as requested
       ☐ Other _____
    ☐ You have not reasonably demonstrated that your appeal issue(s) has adversely affected your welfare, per CCR 3084.1(a)
    ☐ This is a request for information; it is not an appeal. Use form GA-22, Inmate Request for Interview.
    ☐ You may only submit one (1) non-emergency appeal within a seven-calendar day period. Per CCR 3084.4(a)(1-4)
    ☐ You are attempting to change your original appeal issue.

☐ **9. Other**
    ☐ Staff complaints shall not be combined with other appeal issues, per administrative bulletin 05-03.
    ☐ You have more than one issue in your appeal that cannot be addressed by one department. One issue per appeal.

_D. J. JACKSON / S. BABICH_
Appeals Coordinator

**FEB 1 3 2007**

DATE

CDCR FORM 695
HDSP APPEALS OFFICE

**SEE REVERSE FOR ADDITIONAL INSTRUCTIONS**
→ **PERMANENT ATTACHMENT** ←

State of California                                                    Department of Corrections and Rehabilitation
                                                                                    High Desert State Prison

# Memorandum

Date:      April 11, 2007

To:        Inmate Woodson, P-76095
           FCB8-113L

Subject:   **APPEAL LOG# HDSP- C-07-01074**
           **FIRST LEVEL APPEAL RESPONSE**

APPEAL DECISION: Appeal Partially Granted.

APPEAL ISSUE: You state that you were transferred from Salinas Valley State Prison (SVSP) on December 27, 2006. You state that you have not received your property. You are requesting that your property be located and issued to you.

APPEAL RESPONSE: Inmate Woodson, in reaching a decision in your appeal, your CDC 602 and its attachments, applicable sections of the California Code of Regulations (CCR) Title 15, the Department Operations Manual (DOM), and your personal interview with Sergeant D. Park, were all reviewed and considered.

A review of the HDSP list of "Inmates With Test of Adult Basic Education (TABE) Reading Scores of 4.0 or Less" indicates that you have a Reading Grade Point Level (RGPL) above 4.0. A review of the HDSP "Assistive Device Listing" reveals that you have no disabilities requiring special accommodation to achieve effective communication. Effective communication was achieved during your oral interview using normal conversational tones, your personal interaction with the interviewer, and the detail with which you were able to restate the discussion in your own words.

While investigating your appeal, Sergeant Park notes that you claim to have seven boxes of personal property. Your appeal was partially granted at the Informal Level stating that HDSP Receiving and Release has received two boxes from your sending institution, and would issue them to you. You were not satisfied with that response and re-submitted the appeal for Formal Level response on February 6, 2007.

On Febuary 13, 2007, the HDSP Appeals Office sent you an Appeals Screeening Form stating that your appeal was incomplete and the necessary documentation must be included. Necessary documentation in this case would be the CDC 143 Property Transfer Receipt and/or the CDC 1083, Property Inventory form from when your property was transpacked to be shipped from SVSP to HDSP. You then re-submitted the appeal with a copy of a CDC 1083 dated February 11, 2007. This CDC 1083 was completed as a result of your placement into Administrative Segregation Unit (ASU) while housed at SVSP, and has nothing to do with your transfer to HDSP. You have not supplied the appropriate or necessary documentation in order for this appeal to be completed.

During the appeal interview with Sergeant D. Park, you stated that you had received two boxes of property that were "shelf property" while you were housed in ASU at SVSP. You went on to state that you are still missing property and believed that it was still in the ASU property room at SVSP. During the interview, you also stated that you had filed numerous duplicate appeals regarding this

Inmate Woodson P76095
Appeal Log #C07-01074
Page 2

issue with SVSP. Sergeant Park contacted the ASU property Officer at SVSP, who is researching you claim.

Your request that your property be located and issued to you is partially granted in that two boxes have been located and sent to you. You need to submit your appeal to SVSP for location of your remaining property.

Based upon the information above, your appeal is partially granted.

If you are dissatisfied with this First Level Response, you may send this appeal to the Second Level Review by following the directions on the back of this appeal.

D. L. RUNNEL S
Associate Warden
Central Operations

c:    Central File
      Appeal File

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region    Log No.    Category 5
1. HDSP-C    1. 07-1074    Transfer
2. _____    2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

NAME    NUMBER    ASSIGNMENT    UNIT/ROOM NUMBER
Woodson, T.    P-76095    _____    C-8-113 L

A. Describe Problem: I, Thomas Woodson CDC# P-76095 arrived at High Desert state Prison P.O. Box 3030 Susanville CA 96127 on December 27, 2006. Appellant was/is housed on facility "C" bldg. 8 cell #113 L. Appellant was not issued his personal property from sending institution Salinas Valley state Prison P.O. Box 1050 Soledad CA 93960. As a result appellant is suffering A-typical and significant hardship being deprived of his personal hygien materials making it impossible to practice essential health habits in compliance with title 15 Admin. code 3061. Deprivation of Appellants property denies his access to the courts and to correspond concerning his active cases and to inform the courts of his whereabouts, in violation of Title 15 Admin. code.

If you need more space, attach one additional sheet. 3160(a).    See Attached Sheet

B. Action Requested: The issuence of Appellants seven boxes of property including Appliances (T.V. Radio etc...) which are Appellants Authorized property per Title 15 Admin. Code 3190

Inmate/Parolee Signature: Thomas Woodson    Date Submitted: 1/8/07

C. INFORMAL LEVEL (Date Received: 1-30-07 )

Staff Response: Partially granted. HDSP R+R has recieved 2 Boxes from your Sending Institution. These two Boxes will be issued to you

Staff Signature: _____    Date Returned to Inmate: FEB 01 2007 / 1-30-07

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

Appellant has not recieved the two boxes mentioned above. Also Apparently Appellants property is not all accounted for from sending institution. Appellant would like his property located and expedited to him as soon as possible. Appellant has legal litigation in two courts with legal deadlines.

Received
APR 24 2007
Signature: Thomas Woodson    Date Submitted: 2/6/07

Note: Property/Funds appeals must be accompanied by a completed    CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

JAN 10 2007
HDSP Appeals

FEB 07 2007
HDSP App

Received
FEB 08 2007
HDSP Appeals

Received
MAR 09 2007

First Level    ☐ Granted    ☒ P. Granted    ☒ Denied    ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: **3-12-07**    Due Date: **4-20-07**

Interviewed by: _Sgt. D. Park  4-12-07  Partially Granted_

**✳ Refer to Attachment ✳**

_____

_____

_____

_____

_____

Staff Signature: _____    Title: _Sergeant_    Date Completed: **4-12-07**

Division Head Approved:    Signature: _____    Title: _Lt_    Returned Date to Inmate: **4-19-07**

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

_Salinas Valley State Prison's Ad-Seg property officer T. Reamer has contacted Appellant via correspondence stating she has located Appellants property, 4 boxes and 1 t.v. will be post transpacked and forwarded to Appellant "as soon as possible". Appellant seeks to recieve his property at H.D.S.P." earliest convenience. Appellant has active legal litigation going on in Case# CV05-0446 and CV02-7560 RT(ANP) for wich he needs his transcripts, briefs and other documents including addresses_

Signature: _Shane Woodson_    Date Submitted: **4/22/07**

Second Level    ☐ Granted    ☒ P. Granted    ☐ Denied    ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: **4-24-07**    Due Date: **5-22-07**

☒ See Attached Letter

Signature: _____    Date Completed: **4/30/07**

Warden/Superintendent Signature: _____    Date Returned to Inmate: **5-10-07**

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

_____

_____

_____

_____

_____

Signature: _____    Date Submitted: _____

For the Director's Review, submit all documents to:    Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

....................................................................

DIRECTOR'S ACTION:    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____
☐ See Attached Letter

Date: _____

CDC 602 (12/87)

So as not to delay or deny the Administrative remedy. I have Court litigation actively in progress and need valuable file numbers and other documents. Also my hygene products personal correspondences, registerable property T.V. Radio etc. I have been issued nothing, seeking your help.

Respectfully Submitted

[signature]

We received an appeal on 1/10/2007 that was a property issue. It has been assigned for informal response from R.R. The response was sent to you on 2/1/2007.

[signature]

S. BABICH
Appeals Coordinator
FEB 2 1 2007

Thomas Woodson. P.76095, C-8-113

TO: V. Dye

Dear Ms. Dye, I am a new arrival to H.D.S.P, recieved 12/27/06 from Sending institution S.V.S.P. 12/26/06. I have been at this prison for 48 days without any of my property issued to me or my missing property located and expedited to me. I have submitted several 602 appeals concerning these issues. Sent 602 on 1/3/07, 1/8/07, 1/18/07, 1/25/07 (warden) Sent request for their processing on 1/30/07 with log numbers. I have recieved only one assignment notice dated 1/26/07 on the informal level. It is 17 days past Appeal time limits (working days) per 3084.6 (b)(1) T.15 Admin. Code. Still no response. Please locate my appeals and provide me with log numbers and due dates...

Received

FEB 1 6 2007

HDSP Appeals

BAKERSFIELD CA 933

MOJAVE CA

08 MAR 200

$ 00.63°
MAR 07 2007.
02 1M
0004224385
MAILED FROM ZIP CODE 93215

UNITED STATES

High Desert State Prison
**Attn: Inmate Appeals Office**
P.O. Box 270220
Susanville, CA  96127

96127+0004-20 B002

North Kern State Prison
Inmate Appeals Office
P.O. Box 567
Delano, CA  93216-0567

Thomas Woodson P76095, C-8-113
High Desert State Prison
P.O. Box 3030
Susanville CA 96127

February 1, 2007

TO: Lassen County Superior Court

Attn: Court / Clerk

    I am a prisoner currently housed at H.D.S.P P.O. Box 3030 Susanville CA 96127, recieved at institution on 12/27/06 from sending institution S.V.S.P on 12/26/06.

    I, T/m woodson P76095 am being deprived of my property by H.D.S.P without due process and equal protection of the law. H.D.S.P is supporting S.V.S.P in its retaliation against me for excercising my first amendment constitutional right to file a prison grievance. No adequate deprivation remedy is available. I have been here at H.D. S.P. for 35 days sitting in cell 113 on C-facility bldg.8 with nothing, deprived of all property, medical care, Accomodation chronos or common courtesy of staff when inquiring about my property. I have active court litigation going on in the Central and Northern District Court. My property being unduly withheld is denying me meaningful access to the courts. I have sent 602 Administrative appeals concerning this issue on 1/3/07 1/12/07, 1/24/07 and 1/30/07 to the Appeals coordinator per T.15 CCR 3084. 1(d). I have not received any assignment notices or replies. I am not being afforded an opportunity to Exhaust my Administrative remedies as required by the courts before filing a petition. I need to know what to do when the institution is conspicuously and arbitrarily not processing the appeals?

Respectfully H. Thomas Woodson

**LASSEN COUNTY SUPERIOR COURT**
**220 S. LASSEN STREET, SUITE 2**
**SUSANVILLE, CA 96130**

**Case Name:** THOMAS WOODSON

**Case No.:** CDC#P76095

**Date Returned:** 2/8/2007

### NOTICE OF RETURN

*In an effort to serve you better by providing procedural assistance that is as helpful as possible **without giving legal advice**, the following information is provided:*

[ ]    Pursuant to *California Rules of Court, Rule 201,* all Writs of Habeas Corpus that are submitted to this court for filing, shall be:
      (1) Submitted on 8 1/2" x 11" paper
      (2) Printed only on one side of the paper
      (3) Each page to be numbered consecutively at the bottom
      (4) Each document to be firmly bound at the top
      (5) Each original document presented for filing shall contain two pre-punched, normal
          size holes, centered 2 1/2" apart and 5/8" from the top of the paper.

*(You may choose to use the optional judicial council form # MC 275, Petition for Writ of Habeas Corpus.)*

[ ]    For return of conformed copies, a self-addressed stamped envelope of appropriate size with sufficient prepaid postage must be submitted to the court. The court will **not** furnish postage to return documents.

[ ]    The court is unable to comply with the request for return of conformed copies - there were no copies submitted with the original document(s).

[ ]    Document does not conform to California Rules of Court / local rule of court:_____
and is being returned. The document has **not** been filed with the court.

[ ]    Please contact the Family Law Facilitator at 700 Court Street, Susanville, CA 96130 for assistance. *(Flyer enclosed.)*

[ ]    To obtain forms for dissolution of marriage, contact either:

      Typing and Temporaries  (Fee charged for form packets)
      1915 Main Street, Susanville, CA 96130. (530) 257-8088.

    OR-    The prison law library.

[ ]    A dissolution of marriage action (divorce) must be filed in the county where you resided **before** being incarcerated. *Government Code § 244.*

[ ]    This communication is being returned to the sender because judges are prohibited from considering "ex parte or other communications concerning a pending or impending proceeding". *California Code of Judicial Conduct, §5.1(A).*

[x]    Other: THE COURT CANNOT PROVIDE YOU WITH INFORMATION AS TO YOUR NEXT STEP IN THIS PROCESS.
      I HAVE ENCLOSED A BLANK WRIT OF HABEAS CORPUS, FOR YOU AFTER ALL ADMINISTRATIVE
      REMEDIES HAVE BEEN EXHAUSTED AND THE COURT REQUIREMENTS ON WRITS

S. Glines

*Please note that employees of the court are prohibited by law from giving legal advice*
*and are not permitted to assist in the selection or completion of forms.*

<u>LASSEN COUNTY SUPERIOR COURT REQUIREMENTS ON WRITS,</u>
<u>DISSOLUTIONS, POSTAGE, FORMS , COPIES & ETC.</u>

*************************NOTICE*****************************************
PURSUANT TO CALIFORNIA RULES OF COURT-RULE #201(b), 201(c), 201(d)
ALL WRITS OF HABEAUS CORPUS WHICH ARE SUBMITTED TO THS
OFFICE FOR FILING WILL BE ON 8 ½" X 11" PAPER, ONLY ONE SIDE IS
TO BE COMPLETED, (NO DOUBLED SIDED COPIES) EACH PAGE SHALL
BE NUMBERED CONSECUTIVELY AT THE BOTTOM, EACH DOCUMENT
SHALL BE FIRMLY BOUND AT THE TOP LEFT HAND CORNER, EACH
PAPER PRESENTED FOR FILING SHALL CONTAIN TWO PRE-PUNCHED
NORMAL SIZE HOLES, CENTERED 2 ½ " APART, AND 5/8 INCHES FROM
THE TOP OF THE PAPER.

CALIFORNIA RULES OF COURT RULE 319(b) MATERIAL LODGED WITH
THE CLERK SHALL BE ACCOMPANIED BY AN SELF ADDRESSED
STAMPED ENVELOPE (S.A.S.E.) WITH SUFFICIENT POSTAGE FOR
MAILING YOUR COPIES BACK TO YOU.

**THIS OFFICE WILL NOT FURNISH POSTAGE**

THE COURTS HAS SUBCONTRACTED TYPING AND TEMPORIES TO
HANDLE ALL COURT FORMS EXCEPT SMALL CLAIMS PACKETS SO ALL
FORMS ARE AVAILABLE THRU TYPING & TEMPORIES OR THRU YOUR
LOCAL LAW LIBRARY (IF YOUR ARE INCARCERATED) OR BY THE
STATES SELF HELP WEBSITE LISTED BELOW:

*IF YOU DO NOT HAVE ANY ACCESS TO YOUR LAW LIBRAY THE COURT
WILL PROVIDE COURT FORMS HOWEVER YOU MUST IDENTIFY EACH
FORM # THAT YOU ARE REQUESTING THE COURT WILL FURNISH ONE
COPY OF THE FORMS REQUESTED.

TYPING & TEMPORARIES, INC.          www.courtinfo.ca.gov
1915 MAIN ST.                       (CA SELF HELP WEBSITE)
SUSANVILLE, CA 96130                FORMS MAY BE DOWNLOADED
(530) 257-8088

INCARCERATED INMATES CANNOT FILE A DISSOLUTION IN LASSEN
COUNTY UNLESS YOU WERE A RESIDENT IN LASSEN COUNTY PRIOR TO
YOUR INCARCERATION PER FAMILY CODE 2320 & GOVERNMNT CODE
244.

******YOU ARE NOT A VOLUNTARY RESIDENT WHILE YOU ARE
INCARCERATED, THEREFORE YOU CANNOT FILE A DISSOLUTION HERE
IT MUST BE IN THE COUNTY IN WHICH YOU HAD RESIDENCY PRIOR TO
YOUR INCARCERATION********

PURSUANT TO SECTION 1279.5(B) OF CIVIL CODE OF PROCEEDURE, NO PERSON IMPRISONED IN THE STATE PRISON AND UNDER THE JURIDICTION OF THE DIRECTOR OF CORRECTIONS SHALL BE ALLOWED TO FILE AN APPLICATION FOR CHANGE OF NAME PURSUANT TO SECTION 1267 OF THE CALIFORNIA CODE OF CIVIL PROCEEDURE EXCEPT AS PERMITTED AT THE DISCRETION OF THE DIRECTOR OF CORRECTIONS.

# INMATE APPEAL ROUTE SLIP

## To: **CA2**

Date: March 19, 2007

From: INMATE APPEALS OFFICE

Re: Appeal by Inmate WOODSON, P76095

Please assign this appeal to appropriate staff for **INFORMAL** level response.

Appeal Issue: PROPERTY

Due Date: **03/30/2007**

Special Needs:

STAFF INSTRUCTIONS:
Begin your response with: GRANTED, DENIED, PARTIALLY GRANTED or
WITHDRAWN. When complete, return appeal to the inmate. Every effort should
be made to resolve the matter at the lowest level possible.

Refer to D.O.M. 54100 for instructions.

T. VARIZ, CC-II / E. MEDINA CC-II
Appeals Coordinators
Salinas Valley State Prison

# INMATE/PAROLEE
# APPEAL FORM
CDC 602 (12/87)

Location: Institution/Parole Region          Log No.          Category

1. _____          1. _____          5
2. _____          2. _____          CAII-Inf 3688

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

TX     SVSP→HDSP w/o prop stored in ASU

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|------------------|
| Woodson, T | P-76095 | | C-8-113 |

A. Describe Problem: I am a prisoner currently housed at High Desert state prison P.O. Box 3030 Susanville CA 96127. I was transferred from Salinas Valley State prison N Adm-in.strative Segregation to H.D.S.P on 12/26/06. My stored AD Seg property was not inventoried and extradited with me per Departmental Operation Manual Article 43 § 54030.13.3, Title 15 CCR § 3194(c).

_____

_____

_____

If you need more space, attach one additional sheet.

B. Action Requested: Please locate and expedite my property to me A.S.A.P This is my third Attempt to remedy this situation with your institution. I have 4 boxes of Property and all my Appliances missing, T.V Radio Walkman cassette player, hot pot etc,

Inmate/Parolee Signature: Thomas Woodson     REC'D MAR 16 2007     Date Submitted: 3/4/07

RECEIVED MAR 14 2007

C. INFORMAL LEVEL (Date Received: 3/27/07)

Prefatorially approved     Staff Response: I/m Woodson has 4 boxes + 1 television located in Ad Seg Annex I/m Woodson's property will be post transpacked as soon as possible.

DELIVERED APR 11 2007

Staff Signature: T Reamer     Date Returned to Inmate: 3/27/07

D. FORMAL LEVEL

If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

Signature: _____          Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

HIGH DESERT STATE PRISON
NAME: _Thomas Woodson_
CDC #: _P-26095_ BED: _C-8-113_
PO BOX 3030 SUSANVILLE CA 96127

HIGH DESERT
STATE PRISON



$0.39
MAR 06 2007
US POSTAGE
FIRST-CLASS
MAILED FROM 96127
0-18J0056002671

C8

_Salinas Valley State Prison_
_31625 Highway 101_
_P.o. Box 1020, Soledad CA_
_93960-1020_

_AttN: Appeals Coordinator_

_48925-001; A001_

EXHIBIT

"R"

# Custodial Officers' Decalogue

## I.

IN A TEMPERATE AND TOLERANT MANNER always imply that you expect the correct attitude from inmates and fellow employees. Don't expect trouble expediting any issue. Never show the slightest uncertainty as to the course of your action. You must be a leade r in the strongest sense of the word, for your integrity as an officer is forever in an extremely hazardous position. You must know the exact limits of your authority. Never show that you have been angered personally by being profane, vulgar, or abusive in any manner.

## II.

KEEP A PROPER SENSE OF PROPORTION. Do not make a tremendous issue over some minor matter and then let a larger situation get out of hand because of lack of knowledge or fear to tackle it.

## III.

HAVE A SOUND KNOWLEDGE of the general custodial requirements of your institution, the chain of command, the basic impact of educational and recreational needs, and the great potential of spiritual guidance.

## IV.

DO NOT FAIL TO SHOW RESPECT. The inmate, as a personality, is usually a reasonable human being. Allow him to express himself, for respect is the basic factor in discipline, and to be most effective, discipline must be sure and impersonal.

## V.

EXPRESS YOUR APPRECIATION when behavior is commendable. Inmates and fellow employees are just as grateful for praise as you are and it seems sometimes that precious little is offered. The appreciation you show today may eliminate tomorrow's discipline.

## VI.

NEVER REFUSE A REASONABLE REQUEST. When refusing a request, explain why it is necessary and express your regrets.

## VII.

NEVER ENDEAVOR TO PUNISH AN ENTIRE GROUP; however, when it becomes necessary, explain why it is. If any loophole can be left for the clearly innocent, leave it.

# VIII.

NEVER THREATEN DISCIPLINE. Be sure that when discipline becomes necessary, it will be enforceable and upheld by your superiors. When you find it necessary to invoke the aid of your superior in enforcing discipline, give him all the facts and reasons and these should be in writing. Your superior has as much or more at stake than you have, but don't expect him to be a mind reader.

# IX.

NEVER USE UNNECESSARY FORCE to gain control of any situation. To proceed with force beyond control the treatment then becomes brutal. An officer exercising brutality is liable in the strictest sense.

# X.

CREATE GOOD PUBLIC RELATIONS. Treat all visitors with the utmost of courtesy. Avoid propaganda and disloyalty. Extend your efforts beyond your immediate correctional horizons and contribute to the general welfare of your community.

*Editor's Note:* These rules were reprinted in an in-service training bulletin for correctional officers.

# Retiring warden blows whistle

## OFFICIAL SAYS GUARDS SET UP, PRISONERS COVERED UP ABUSE

**BY JONATHAN SEGAL**
*Herald Staff Writer*
©Copyright Monterey County Herald

A veteran Department of Corrections official who headed Salinas Valley State Prison for six months says correctional officers there set up prisoners for prosecution and covered up instances of brutality by the staff.

Edward Caden retires today after 28 years with the state prison system, including a term as chief deputy warden at Salinas Valley State Prison and six months as acting warden.

In the time he managed the prison, Caden said he found that correctional officers planted contraband on prisoners, setting them up for criminal prosecution. Characterizing corruption at the prison as "pretty well organized," he said Thursday that guards beat prisoners and then conspired to cover it up.

Caden was relieved of the acting warden position in early

*Please see Warden page A12*



NEW SHIT

## Warden

*From page A1*

August following the short-lived return of Warden Anthony Lamarque. Caden was then transferred to what he called a non-existent bureaucratic position in Sacramento.

He said Thursday he is retiring because he could not effectively fight wrongdoing in the prison system while working in it.

"Woe to anybody who tries to upset the little apple cart up there," Caden said in a telephone interview from Sacramento.

Caden is not the first to allege misconduct at the prison. Two former guards there have filed lawsuits containing allegations of misconduct by fellow guards and their superiors. One former officer, Donald Vodicka, testified about prison corruption in front of a state Senate committee in January. He described a gang of rogue prison guards, calling themselves the Green Wall, that had been formed to enforce a code of silence at the maximum-security prison near Soledad.

He said the group had intimidated even had members within the prison's internal affairs unit.

Investigating similar allegations, the state Office of the Inspector General concluded in a January report that Lamarque had prevented timely investigation into the activities of the Green Wall and intentionally misled state investigators about the guard group.

A month later, seemingly as a result of the state report, Lamarque went on sick leave and Caden, who had been his chief deputy, took over.

Some prison employees have said the change was dramatic. Responding to his own findings and those of outside investigators, Caden said he started mandatory ethics training for guards and ended preferential treatment for favored employees. He said he initiated several criminal investigations into misconduct at the prison, some of which are still under way.

On Aug. 2, Lamarque returned from sick leave to retake the leadership at Salinas Valley State Prison. But, following clashes with Caden over reforms, Lamarque worked just five days before returning to disability leave.

At the end of the same week, on Aug. 9, Caden was transferred Kane, formerly interim warden at the Correctional Training Facility in Soledad, was appointed to serve as acting warden at the nearby Salinas Valley State Prison. The move leaves Kane's chief deputy in charge at the training facility.

State corrections spokeswoman Terry Thornton said Lamarque could return to his old job if his medical problems diminish.

"This is a temporary situation," she said.

Caden said reinstating Lamarque would be a big mistake if the state is interested in cleaning up the prison. He said Lamarque's return in August immediately energized a ward faction in the prison hierarchy (factions that Caden characterized as a "terror" regime.)

"There are a lot of people at the institution who are just terrified by this guy," Caden said.

Lamarque could not be reached to comment Thursday. However, Lt. Eloy Medina, spokesman for Salinas Valley State Prison, said Lamarque had embraced the changes Caden made in his absence.

"During his tenure Mr. Caden reinforced a staff through training many of the in Ethics and professionalism, communication at all levels, and positive, long-term goals for the institution," Medina said in a written statement. "When Mr. Lamarque returned he applauded the job Mr. Caden did in his absence."

But Caden said Lamarque blew off the results of internal and external investigations.

"He gave me his assurance that he wasn't aware of the things that were going on," said Caden. "He knew that there were eight boxes of investigative materials in the prison, but he never read them."

In the other lawsuit filed by a former correctional officer, Manuel Rodriguez contends in a Monterey County lawsuit that officials at Salinas Valley pressed prosecutors to charge him with a crime because he had blown the whistle on staff misconduct leading to an inmate riot in 1999.

The allegations about Salinas Valley State Prison have emerged against a larger backdrop of legislative demands for reform of California's penal system. The Department of Corrections has received a new set of top administrators and the guard's union, long a potent force in state politics, has lost some influence but remains

# LETTERS

## RAMIREZ v. GALAZA, REVISITED

Dear CPF,

I recently came across your newsletter. It is so full of noteworthy information. The article concerning *Luis Ramirez v. George Galaza* is something I would like to be a part of because the treatment of Ad-Seg prisoners here at Salinas Valley State Prison is becoming unbearable.

Incoming mail is not being received, and food is being passed out in small portions and spit on by officers. I would love to have an opportunity to talk with anyone or any organizations who would be willing to help. People need to be made aware of the conditions here at Salinas Valley State Prison. Appeals (602s) are no help. Although writing this letter can be a risk for me, my willingness to share this information is so strong that I will do whatever it takes to make a change—my expectations are high.

*—C.W., Salinas Valley State Prison*

## DOUBLE-CELLING? NOT ME!

Dear CPF,

I went to a CDC-115 hearing a couple months ago. My charge? I was refusing to double-cell. The hearing officer told me that I was holding up valuable real estate. He offered to dismiss my write-up if I would take a cellie. I told him I wasn't accepting anyone. I'm in Ad-Seg for some trumped-up charges anyway. Why should I oblige them by making room for another person to be placed in the hole? Besides, I enjoy my solitude. It allows me to focus on my priorities, namely, my freedom, without the distractions a cellmate may bring.

So, I lost 30 days of good-time credits. What's that when you can only get 80 days worth of credit reduction per year? It's not like back when you could reduce your sentence in half. In the general population, guards threaten prisoners who refuse to accept a cellie with confiscation of their appliances and for the most part, that is enough to make them acquiesce. What many of them may not know is that some of them may have a legitimate right to be single-celled. In the *Madrid vs. Gomez* decision (889 F.Supp. 1146, et m. 179)

CDoC concedes that a prisoner can be given single-cell status if he is on psychotropic medication, physically impaired or is a high notoriety case. He can apply for single-cell housing pursuant to CCR 3337.1-A, prisoner with a history of cell fights can also apply.

On November 8 and 9, 2004 Ad-Seg correctional officers pulled out 211 prisoners who were single-celled and placed them in the "walk-alone" cages for more than 5-plus hours until they chose a cellmate among them. They all refused. This act violated CDoC's own operational procedure (OP #2), which states "no force would be used to bring about double-celling," signed by the current Warden A. Kane, SVSP, currently has five Ad-Seg housing units: D1, D2, D7, D8, and a one hundred bed detached Ad-Seg. On the day of this writing, B-yard had a major incident so I guess they'll be needing more bed space in Ad-Seg. What I have noticed in my seven months back here is that when bed space is tight they are quick to release prisoners back to the general population, prisoners whose rule violations do not carry more than a six month SHU term. Imagine if we all refused a cellie...change will come.

*—Tracye B., Washington, SVSP*

2

## 9 SALINAS VALLEY GUARDS FIRED

Nine guards from Salinas Valley State prison were fired because of a beating incident, in what is believed to be the largest mass firing in CDoC history. A tenth officer was demoted.

SVSP is home to the infamous "Green Wall" gang of guards, who intimidate prisoners and other staff and tag the prison with the initials "GW" and with "7/23" — a reference to the 7th and 23rd letters of the alphabet.

Green Wall was the subject of an investigation in 2001 by the inspector general. The battery that led to the firings resulted from a 2003 incident, in which guards extracted a prisoner from a walk-alone exercise cage in the prison's Ad Seg unit. Prior to the extraction, one officer instructed another to turn off the video camera on the yard. Guards stormed the cage, knocked the prisoner to the ground, and kicked him.

Ed Caden, then Chief Deputy Warden

**PRISON FOCUS**

of SVSP, said that none of the officers involved filed reports. Those who were fired were charged with both battery and covering up the incident. Caden later served as interim warden before he was transferred to Sacramento and demoted. He resigned from CDoC after 28 years.

At least three of those fired were members of Green Wall.

The Monterey County District Attorney has declined to file criminal charges in the battery.

Prior to the SVSP firing, the largest mass firing in CDoC history is believed to be the eight guards fired in 1996 in the Corcoran bus incident.

*Sacramento Bee, Nov. 10, 2004*

# The Mercury News
MercuryNews.com

Search:

Articles-last 7 days    for

News | Sports | Entertainment | Business | Lifestyles | Shop Local | Classifieds | Jobs | Cars | Rea

  

GETAWAY XPRESS
Travel Auction Nov 7 - 16
3 Night Bahamas
Vacation for 2

Clic
to R
an

**Welcome Guest**
**Sign Up | Sign In**
**Member Benefits**

Back to Home > News >

Wednes

## Peninsula

CLASSIFIEDS

▶ JOBS
▶ CARS
▶ REAL ESTATE
▶ RENTALS
▶ STUFF
▶ PERSONALS

SHOP LOCAL  NEW!

Weather | Traffic

Yellow Pages | Maps

Archives



Subscribe

Subscriber Services

Weather

57°   HI 63 Lo 49
Mostly Cloudy

Complete forecast

News

• Breaking News
• Local News
• Cupertino / Sunnyvale Guide
• Peninsula Guide
• S.J. North Guide
• S.J. South Guide
• West Valley Guide
• San Jose/Valley
• Central Coast
• Peninsula
• Alameda County
• California & the West
• Nation/World
• Politics
• Obituaries
• Education
• Science & Health
• Local News

Posted on Wed, Nov. 10, 2004

📧 email thi

# Guards fired for roughing up inmate

Associated Press

SOLEDAD, Calif. - Nine correctional officers at Salinas Valley State Prison were fired recently in connection with the beating of an inmate last year, and for covering up the incident, a newspaper reported Wednesday.

UP TO 5% CASH
on all purchases

• NO ANNUAL FEE
• 0% INTRO APR

OPEN SMALL BUSINESS NOT MORE*    BLUE CAS
▶ CLIC

The California Department of Corrections confirmed that "several" prison employees "have been served with adverse actions" at the Monterey Count spokeswoman Terry Thornton said.

A former Salinas Valley warden and top-ranking union officials both said the nine officers had be anonymous source told The Sacramento Bee that a 10th officer was demoted as a result of the i investigation.

Over the past three years, the prison has been the subject of numerous investigations by the De Corrections and the Office of the Inspector General into a small group of employees who called t "Green Wall."

Ed Caden, former warden of the prison, told the Bee that the guards were fired after the Novem an inmate, and not because of any investigation into the "Green Wall."

However, three of the officers who were fired had previously been implicated as members of the Caden said.

The disciplinary action stemmed from an incident that started when an inmate refused to come o alone" cage in the exercise yard outside the administrative segregation housing unit at Salinas V

AP Wire | 11/10/2004 | Guards fired for roughing up inmate

Page 2 of 2

• Special Reports
• Iraq: The Aftermath
Opinion
Business
Sports
Entertainment
Lifestyles

The cages are monitored by video cameras operated by officers in a control booth, department s Bee. But before the officers responded to extract the inmate, one of them instructed the control turn off the camera.

Officers then stormed the cage to get the inmate out, at which time the unidentified prisoner was ground and kicked, according to Caden. The inmate had some red marks on his face as a result confrontation, but did not require medical treatment, Caden said.

The nine officers were disciplined both for the alleged excessive use of force on the inmate and f any reports on the incident.

Caden was serving as the chief deputy warden at Salinas Valley at the time of the incident, but h find out about it until this past February, when he was named interim warden of the prison.

"I found out, and we immediately began an investigation," Caden said. Caden served as interim August. He has since retired.

California Correctional Peace Officers union Vice President Lance Corcoran confirmed the nine officers had been fired, but he did not have any other details.

Former CCPOA President Don Novey said the firing of nine officers was "the largest I can think heard of more."

In 1996, eight officers were fired for the rough handling of three dozen inmates getting off a bus Prison. All those officers were later reinstated.

Correctional agency spokesman J.P. Tremblay said that the adverse actions taken against the S employees shows "we will not tolerate employee misconduct."

email thi

| Ads by Google |
| --- |
| **Public Record/Find People** |
| Find vital records, people, assets. Investigate court files $2.99 / Day |
| www.lawresearchservices.com/master/ |
| **Prison Services Project** |
| Legal support for prisoners Litigation support for attorneys |
| www.prisonservicesproject.com |
| **Inmate Telephones & Calls** |
| PCS- Inmate Telephone Security and Calling Service Provider |
| www.pcsinmates.com/services.html |





522-A Broadway   King City, CA 93930   Phone: 831-385-4880 — Fax: 831-385-4799

## News

Top Stories

King City Rustler

Greenfield News

Soledad Bee

Gonzales Tribune

Sports Update

Columns/Editorials

Letters to the Editor

Sound Off

Obituaries

Court Report

Sharing the Faith

Publisher's Report

Pet of the week

Search Archives

RSS Feed
Information

Classifieds

View Classifieds

Search Classifieds

Place Classified

## Contact Us

Staff Directory

Engagement Form

Wedding Form

Birth Form

Subscription
Information

Local Links

Monterey County

Soledad

Gonzales

KRKC Radio

King City

Greenfield

## Secretive 'Green Wall' protected rogue prison guards

BY THE ASSOCIATED PRESS



SACRAMENTO - Guards at a California state prison formed their own gang-like organization, inventing hand signals and codes to telegraph their membership to inmates and other officers, state investigators concluded in a confidential report this month. The Office of Inspector General found that a group of correctional officers at Salinas Valley State Prison near Soledad formed an alliance in 1999 that they called the "Green Wall," after the color of their uniforms. "Numerous incidents" involving the group took place over the next two years, including the vandalizing of prison property with markings of "GW" and "7/23," which stood for the seventh (G) and 23rd (W) letters of the alphabet. The Green Wall logo was taped to a control room window: a pair of dice, an upside-down horseshoe with the numbers 7 and 23, and the satanic symbol "666." Members developed a hand signal - fingers folded into the shape of a W - to "represent" their alliance to inmates and other employees, a whistleblower testified to a joint state Senate committee hearing last week. The prison's own internal investigators smuggled into the prison a green-handled knife engraved with "7/23" as a promotion gift for a sergeant, according to the report obtained by The Associated Press. The report is sharply critical of Warden Anthony LaMarque, who took command in March 2000 and remains the warden there. LaMarque had a special relationship with several members of the prison's internal affairs unit, the report found: He ignored reports that they might be involved in the Green Wall, and refused to transfer them during an investigation of allegations that they used excessive force against inmates and engaged in other misconduct. LaMarque was "evasive" when he was questioned about the Green Wall, and falsely said the Monterey County district attorney was probing the organization, the report said. It said he admitted knowing about the organization, but didn't try to find out what it was or

who belonged. The warden "wouldn't be able to comment because it's pending litigation right now," said prison spokesman Lt. Eloy Medina. The Jan. 5 report was sent to the California Department of Corrections for "appropriate action," but department spokesman Bob Martinez said he couldn't comment because the report is supposed to be confidential. Former internal affairs officer Donald J. Vodicka, a hulking man with a shaved head, was so frightened after he blew the whistle on the Green Wall that he wore a bulletproof vest and repeatedly burst into tears while testifying before the joint Senate hearing last week. Vodicka sued the state and corrections officials in September for allegedly violating his whistleblower rights by retaliating against him with a demotion, defamation, and infliction of emotional distress. He is currently on a medical disability leave. He alleged members of the Green Wall employed a "code of silence" to hide activities including roughing up inmates after several guards were injured on Thanksgiving Day 1998. The organization grew out of that event, with green-attired members eventually throwing parties featuring green beer on the 7th and 23rd days of the month. The inspector general was unable to verify claims that members of the Green Wall set up inmates for assaults, vandalized cars of fellow employees who were not members, or intimidated other staff members. Lance Corcoran, vice president of the California Correctional Peace Officers Association, said a vehicle belonging to Eugene "Gino" Carranza, president of the union's Salinas Valley Prison chapter, was vandalized after he reported wrongdoing by two supervisors at the prison in 1999 or 2000. "These guys who do crap like that, they're cowards and we don't support them at all," Corcoran said. "It was the Sharks at Corcoran (State Prison), maybe we'll have the Jets (as in "West Side Story"). Now we have the Green Wall; it doesn't matter what moniker we have for it." A March 2001 internal memo by Carranza says the Green Wall also was known as "Seven Twenty-Three" and "Code of Silence." Carranza reported members greeted each other with a signature hug, and sometimes wore turkey pins on their uniforms to symbolize the Thanksgiving event that gave the group its start. Department spokesman Martinez said new Youth and Adult Correctional Secretary Roderick Hickman, in testimony to the Senate committees, "made it very, very clear this is something he's pledged to deal with, to confront in a relentless way, and to get rid of."


**Send us your comments about this article.**


i believe that this guys "green wall" are sending the wrong message, all there doing is now theres a new

for all department employees. "We want to get our house in order," she said.

Also during the hearing, a supervisor at California's prison headquarters testified that he had read more than 200 books after superiors bounced him to a meaningless job in retaliation for blowing the whistle on rising overtime and sick leave costs.

Mark Krupp, a former prison guard who once managed three Department of Corrections computer systems, said he was paid $6,000 a month for 15 months while doing a job that entailed about an hour of work a week.

"I basically did reading and applied to 50 other jobs [within the department] and went to interviews," he said.

State Sen. Jackie Speier (D-Hillsborough), who led the hearing as chairwoman of the Select Committee on Government Oversight, called Krupp's whistle-blower case a "nightmare" and a "stunning case of what is wrong with the system" for disciplining employees accused of misconduct.

"This has gone on almost three years now," said Speier. "This man read 200 books, not because he wanted to ... but because no one would give him work."

The corrections department had appealed findings by the independent inspector general that superiors retaliated against Krupp.

A judge has sent the matter back to the state personnel board for a new hearing, and a lawsuit by Krupp is pending in Superior Court.

Krupp, who now oversees contracts for the department's substance abuse program, said all he wanted was for the department to "stop retaliating against me, a regular job ... [and] to repay me for legal expenses" of more than $20,000.

Looking at state officials, Speier said, "This does not add up."

The prison disciplinary system has been criticized repeatedly as being too cumbersome, complex and time-consuming. The inspector general has found that 43% of all cases are dropped because investigations are not completed by a one-year deadline.

State departments took 3,000 disciplinary actions in 2002, the personnel board said, and 1,648 were appealed.

Of those appeals, 913 were settled, 312 were withdrawn and 161 were pending. Of the cases decided by the board, 138 were sustained, 66 were modified and 58 were revoked.

Speier closely questioned Woodford and youth authority director Walter Allen about how they would deal with any employees who shunned other employees or retaliated against them for reporting wrongdoing.

gang for the inmates to worry about,now theres a new
enemy. and all its going to do is creat more violence,
and more violense against the guards. they are
supposed to be the example not the problem. now
theres more of a chance for the inmates not to
rehabilitate.
juan


Locally, in Gonzales, we have first hand experience of
this "gang like" behavior of correctional officers,
documented by the Gonzales Police Department. The
police department documentation will show that off-
duty correctional officers intimidate residents by vulgar
verbal abuse of children, abuse of the legal system, and
creating peace disturbances...All without reprocussion.
One can only imagine the kind of abuses that are
effected behind prison walls. There is a "code" between
officers, even between correctional officers and police
officers. The offenses that these officers have
committed, would easily cause an arrest or a day in
court for the average citizen, but the badge queues our
often commended police officers to turn a blind eye,
and direct effort into dismissing the incidents with as
little affect to the offending officer as possible. The chief
will dismiss these oversights as "the discretion of the
officer" and cite their commendations. This provides the
officer with the ability to be judge and jury, and the
confidence to circumvent the law. When you combine
this with a biased judge, you end up with criminals
wearing badges. To that end, it should not surprise
anyone that such events do not become public
knowledge until they are allowed to build up to these
proportions.
Francisco M. Camacho


On the flipside, I'm proud to say, my husband is a
Correctional Officer and I'm even more proud of his
character and the pride he takes in his position. He has
never involved himself in violent or childish games,
inside or outside the prison. It's truly sad when this kind
of thing happens, in any field of law enforcement. We
all must remember to chastise the ones who have been
wrong and support the ones who have the courage to
say so. The majority of Correctional Officers are good
people. Don't allow this new knowledge of illegal
practices to cause you to turn a deaf ear or ignore the
ones who deserve recognition for a job well done.
Lynn

CENTER ON JUVENILE AND CRIMINAL JUSTICE PRESS ROOM

Center on Juvenile and Criminal Justice, 1622 Folsom Street, San Francisco, CA 94103

http://www.cjcj.org/index.php
Tel: (415) 621-5661 | Fax: (415) 621-5466

# The San Francisco Chronicle
## AP Exclusive: Alleged 'Green Wall' Guards Among Those Cleared by Panel

**DATE: March 22, 2004**
**Don Thompson**

State Corrections officials tried to discipline three Salinas Valley State Prison internal investigators allegedly tied to the "Green Wall," a gang-like organization of rogue guards who intimidated inmates and fellow employees, public records show.

But the discipline was overturned by the State Personnel Board, which rejects more than 60 percent of cases brought by the Department of Corrections and California Youth Authority. Senators leading an oversight hearing Monday say the repeated reversals "can chill the work environment if employees believe 'a few bad actors' have escaped punishment."

Corrections officials say the three internal affairs officers badly botched a cell search, triggering a fight in which the inmate and one of the three was injured.

In a lawsuit against the department and a whistleblower complaint to the Inspector General, former internal affairs officer Donald J. Vodicka alleges three of the four guards involved in the cell search repeatedly roughed up inmates -- in one case for ogling a female secretary.

The union attorney who represented the three guards referred calls to California Correctional Peace Officers Association Vice President Lance Corcoran. He said no one could comment on Vodicka's allegations because of the pending suit, but defended the personnel board's rejection of the departmental charges.

Vodicka and a current Salinas Valley guard who spoke on condition of anonymity said they personally observed the aftermath of several of the incidents in which the inmates required medical treatment, but not the alleged beatings themselves.

The four internal affairs officers were retaliating against a reputed gang leader after a March 2001 altercation between his gang and black inmates, Vodicka alleged.

The gang leader "was talking a bunch of trash to those guys, making them look bad" as they investigated the gang battle, Vodicka said. "They went to visit his cell to make a point."

Disciplinary records obtained by The Associated Press show the investigators claimed to have information the inmate had drugs in his cell, but never documented that claim as required.

They found gang materials but no drugs during the April 3, 2001, search, though the inmate allegedly flushed something down the toilet. They did find the makings of a crude knife, but failed to remove or report those items.

http://www.cjcj.org/press/alleged_green.html

2/18/2005

They also failed to handcuff the inmate as required. A fight ensued, with the inmate subsequently complaining of pain to his head and ankle. One of the officers, Michael Lashkoff, also was injured when the inmate punched him in the face.

Lashkoff, Fernando O. Chavez and Walter Faulkner were each charged with "inexcusable neglect of duty" and bringing discredit to the department. Chavez and Faulkner also were charged with dishonesty, and Faulkner with improperly taking home inmates' handkerchiefs and drawings.

The fourth guard was not charged, though Vodicka names him as a member of the Green Wall. Vodicka's internal complaint and subsequent lawsuit do not name Chavez as being involved, but allege Lashkoff kept a Green Wall insignia on the back of his motorcycle.

In a confidential report obtained earlier by the AP, the inspector general verified that Salinas Valley guards formed the Green Wall, also known as the "Code of Silence," after several guards were injured on Thanksgiving Day 1998.

Members repeatedly vandalized prison property with Green Wall markings, had a secret hand signal, and held parties featuring green beer. The internal investigators smuggled into the prison an engraved green-handled knife as a promotion gift for a sergeant.

Based mainly on the guards' testimony they acted properly, the personnel board ruled Dec. 17, 2002, that the charges lacked sufficient evidence.

More than half the Personnel Board's appeals come from the adult or youth prison systems, with most employees represented by the powerful guards' union. More than 60 percent of the discipline imposed by Corrections or Youth Authority officials is then modified or overturned.

Former Youth Authority Director Jerry Harper complained in an earlier Senate hearing that his efforts to clean up the troubled authority were thwarted because the board hired back most of people he fired.

That's largely because the correctional agencies do a poor job of pursuing disciplinary cases -- then the agencies and the personnel board wind up suing each other and costing taxpayers millions, said state Sen. Jackie Speier, D-Daly City, who is chairing Monday's hearing. The agencies also have disproportionately retaliated against whistleblowers themselves, which Speier called "a huge problem."

Union spokesman Corcoran said prison guards face too many discipline charges. Guard face a one-in-four chance of being disciplined during their career, he said, while charges are brought against one of 12 other state employees.

"Most cases where the employee is obviously guilty never got to the State Personnel Board," Corcoran said. "Only when the case is contested does it go to appeal."

Charges must be brought against guards within one year, instead of three years for non-peace officers. The process is so complex that 43 percent of cases fail for lack of timeliness, the inspector general found. More than half of completed cases are appealed, and the board must act within six months or the discipline is automatically reversed, under a court ruling obtained by the guards' union.

The Corrections Department "loses almost every case it takes to the State Personnel Board. Furthermore, in almost every case, the loss is caused by something that could and should have been prevented," a federal court-appointed overseer concluded this month in a report on the department's handling of

internal investigations and discipline.

New Corrections Director Jeanne S. Woodford told the AP the department is working to streamline oversight of the disciplinary cases, including appointing a single attorney to see them through.

Vodicka alleged retaliation by prison officials after he reported the Green Wall's activities in 2001. He wore a bulletproof vest to testify before an earlier Senate hearing, and said he still fears for his life.

Within 12 days, the personnel board rejected his complaint for lack of evidence.

This site and its contents © 2002 Center on Juvenile and Criminal Justice

**latimes.com.** Los Angeles Times

http://www.latimes.com/news/local/la-me-prison23mar23,1,4467972.story

THE STATE
**Disciplining of Guards Questioned**
Penalties were reduced or dismissed in 60% of appeals, often because of
outgunned state lawyers or weak cases, officials tell a legislative panel.
By Tim Reiterman
Times Staff Writer

March 23, 2004

SACRAMENTO — When California's corrections agencies try to discipline
guards and other employees, they usually are outgunned, state personnel board
officials testified Monday at a legislative hearing.

In more than 60% of the cases that corrections employees appeal to the board, the
penalties are reduced or thrown out.

The failure rate of cases from the Department of Corrections and its juvenile
equivalent, the California Youth Authority, stands out, personnel board President
William Elkins said, because the five-member panel generally sustains 90% of all
state government disciplinary actions that come before it.

Personnel officials said guards and other corrections employees have been
provided with lawyers who often were better prepared and qualified than the
state's representatives. Sometimes the agencies pit employee relations officers
against attorneys hired by employee unions.

"Oftentimes, the department has not made that compelling a case" for discipline,
said board Vice-President Ronald Alvarado.

The officials testified at a Senate hearing into state employee discipline and the
personnel board, which passes judgment on appeals of disciplinary actions
imposed by state departments.

In recent weeks, the discipline of corrections employees has taken center stage in
legislative hearings amid investigations into the conduct of prison guards, reports
of a guard "code of silence" and court cases alleging mistreatment of prisoners.

As part of a remedial plan for strengthening investigations and discipline, prison
officials said, they wanted to add more attorneys to their staffs and involve them at
the outset of investigations. Those steps, they said, would allow them to bring
stronger cases to the personnel board.

Jeanne Woodford, the state's new corrections director, said the department wanted
to improve the training of employee relations officers and provide ethics training

on appeal.

Overseeing it all will be a new team of watchdogs — an independent Bureau of Review — charged with ensuring that discipline is meted out free of the cronyism and improper influence that have tainted the process in the past.

Hickman, who has made cleaning up the culture of corrections a priority since his appointment late last year by Gov. Arnold Schwarzenegger, said the new approach will bring uniformity to a disciplinary process that has been dysfunctional at best.

"It's spelled out, it's written down, it's clear," he said in an interview. "There's no more negotiation. We'll have the same penalties for the same misconduct across the board."

Skeptics note that this is not the first time the state has pledged to become more aggressive in tackling misbehavior among the 50,000 guards and other workers in California's $6-billion prison system.

In the late 1990s, after tales of officers at Corcoran State Prison setting up inmates in human cockfights and then shooting them dead, the Department of Corrections vowed to change. Among other things, officials promised to expand its internal affairs unit and keep investigations free of interference from guard-union bosses.

Although some changes were made, the culture inside the nation's largest prison system — with 164,000 inmates — has proved resistant to reform.

Last year, whistle-blowers alleged new cover-ups at the state prison in Chino, saying that top department officials had blocked an investigation of beatings of inmates by guards.

And earlier this year, a report by a federal court investigator hammered the department for a "code of silence" that protects rogue officers and is condoned by leaders who "neither understand nor care about the need for fair investigations." The report called the department's failure to clean up such corruption a "deliberate disregard" of a "serious, security-related problem."

Despite the discouraging track record, the system's toughest critics believe the foundation is being laid for real reform. Among them is Donald Specter, director of the Prison Law Office, a nonprofit group that frequently sues the state over conditions behind bars.

"This time," Specter said, "they really seem to get it."

Several factors combine to give hope to Specter and other longtime observers of the department. The first is the looming presence of Henderson. Earlier this summer, the San Francisco judge threatened to place the prisons in receivership because he believed the Schwarzenegger administration had a "business as usual" attitude toward reforming the system.

In addition, Specter said, the new manual — or "matrix" — that spells out every

imaginable sort of misconduct and the penalty expected for it, provides a clear standard that wardens would be obligated to follow.

"If they don't follow the matrix, it will be very easy to tell," Specter said. "I think this approach stands the best chance yet of bringing fair and consistent discipline to the department."

Officials hope to begin using the new disciplinary standards by early November. In the last few weeks, they have been meeting informally with the leaders of unions representing prison employees, seeking input.

Mike Jimenez, president of the union representing correctional officers, said he would like to support some sort of reform, but viewed this model as a disappointing, one-size-fits-all approach.

"We look forward to a cleaned-up disciplinary process, but we want just-cause discipline," Jimenez said. "We think each case should be evaluated on its merits, and the penalty weighed against factors like your tenure, your previous behavior patterns, any commendations you received. But what that would require is an employer that gives a damn about you."

Disciplinary cases against prison employees run the gamut, including over-familiarity with an inmate and drug use on duty. In 2003, there were 1,000 investigations. Nearly a quarter — 241 — were declared to be instances of inexcusable neglect of duty, such as sleeping on the job or being evasive or misleading during an interrogation.

There were 128 cases alleging mistreatment of employees or members of the public, and 115 investigations for allegedly driving while intoxicated.

In 19 cases, the charge was excessive use of force on the job, and there were 36 disciplinary investigations centering on drug use.

Prison officials say that under the old system of discipline, wardens had wide latitude in deciding penalties for misconduct, and no training in how best to assess what sort of sanctions to impose.

As a result, a guard who improperly used pepper spray on an inmate at a prison in Imperial County might get a letter of reprimand, while an officer who committed the same offense at a lock-up in Vacaville might be suspended without pay for several days.

An old joke among guards sums up the chaotic system: Beat up an inmate, and nothing happens. Kiss an inmate, and you're fired.

"It was hit and miss and ... we were all over the board," said Joe McGrath, a deputy director for the department who was in charge of writing the new standards.

One veteran internal affairs agent, who asked not to be identified for reasons of

job security, agreed, but put it more bluntly: "Wardens like to be in charge of their own little empire. Hopefully, this matrix will take some of that power away and tie their hands in terms of favoritism."

McGrath, a former warden at Pelican Bay State Prison in Crescent City, said he borrowed from numerous other systems in designing the matrix, including the Los Angeles County Sheriff's Department.

His goal was to set a range of possible penalties for each offense, allowing wardens to adjust up or down slightly if aggravating or mitigating circumstances applied.

One category, centering on honesty and the code of silence, receives strong attention. For employees who mislead or lie during an investigation, the recommended penalty is dismissal. The same is true for officers who prevent or interfere with the reporting of misconduct.

"We have always expected our officers to be honest and forthright, but that issue has really been brought to the forefront this year," McGrath said. "We are making our expectations, and the consequences, very clear, and that's something the department didn't do well in the past. A lot of it went unspoken."

Other offenses that can make a prison employee subject to dismissal are sexual misconduct with an inmate; the unreasonable use of force likely to cause serious injury; and criminal acts such as the use or sale of narcotics.

Among those applauding the department's progress on employee discipline is state Sen. Jackie Speier (D-Hillsborough), who has joined Democratic Sen. Gloria Romero of Los Angeles in conducting numerous hearings on the troubled corrections department.

One hearing in March showed that 60% of the disciplinary actions appealed by employees to the state personnel board were revoked or modified, a dismal track record for the department.

"I'm delighted with this, because it's critical that people who are guilty of the same misconduct receive the same penalty," Speier said. "Hopefully, this will help restore confidence in a system that was just not doing the job."

The internal affairs agent predicted that it would take several years — and some high-profile penalties — for the new standards to have a measurable effect.

"There is a small minority of officers who think they're untouchable and can beat up inmates and do whatever else they want to do without getting disciplined," the agent said. "So until someone gets fired for that kind of conduct — and stays fired — they won't change their behavior.

"But we're definitely heading in the right direction."

---