Thomas R. Woodson P-60925 B-4-110
Calipatria State Prison
P.O. Box 5005
Calipatria, CA 92233

In The United States District Court

for The Northern District of California

Thomas R. Woodson
      Plaintiff

V.

J. Rodriguez, et al.,
      Defendants

Case No. C07-04925 CW (PR)

Amendment to the Complaint

On March 23, 2006 Plaintiff aver that his eighth Amendment right of the U.S. Constitution was grossly, maliciously and saddistically violated causing plaintiff to file an immediate grievance (SVSP C-06-00952) against the officers involved (J. Rodriguez et. al.) The grievance was submitted 3-26-06 to the inmate appeals coordinators office at S.V.S.P. In suspect timing plaintiff recieves a rules violation report (Log# 06-02173) on April 5, 2006 containing a false explanation of facts to make plaintiff appear culpable for the officers unnecessary and wanton behavior perpatrated against plaintiff on 3-23-06. The dubious timing of prison officials R.V.R was conspicuously designed to put a chilling effect on Plaintiff first Amendment right of the U.S. Constitution. Without procedural safe gaurds to protect plaintiff against false accusations, Plaintiff appeals the RVR (Log# C-03-0020 (SVSP Log# 06-02173) and was denied on perspective administrative levels without Seulpetory witnesses listed on the appeal ever being interviewed (Wolf v. McDonnell 418 U.S. 539, 563-67, 41 G.Ed. 2nd 936, 945 Ct 2963 (1974). Subsequently and equally suspect on 4/11/06, six days after recieving the retaliatory RVR Plaintiff was told by an unidentified officer that a Sgt. wanted to see plaintiff about a

(1)

a 602. So plaintiff cuffed up and was escorted to a holding cage in the small back room of the old hobby shop adjacent to the program administration office now known as the health annex. Plaintiff waited patiently to be interviewed. Plaintiff realized he had been duped when the unidentified officer told Plaintiff to, "strip out," meaning to unclothe. Plaintiff asked the officer what his name was. The officer pulled out his can of O.C. pepper spray as a scare tactic, saying, "Take off your fucking clothes". Plaintiff complied to avoid being unduly sprayed with the burning, lung collapsing spray used only in emergencies, but now being used as a tool of wanton intimidation. Subsequently Sgt. Selby entered the room after Plaintiff stood in the standing room only cage a little over two hours w/difficulty. She said, that Plaintiff was going to be placed in Administrative Segregation for 30 days pending investigation into the incident occurring on March 23, 2006. Plaintiff was sent to administrative segregation in conspicuous retaliation for Plaintiff excercising his first Amendment constitutional right to file a prison grievance. It was not until then, that the prison officials deemed segregation necessary. Despite the fact of having returned Plaintiff to his general population cell the day of the incident w/out even mentioning anything about a 115 or segregation, whe plaintiff made the same verbal claims of foul play. Plaintiff's personal property was misappropriated by C/O Blevens and several articles abandoned. C/O Blevens who plaintiff learned later was responsible for packing plaintiffs property for storage, left several articles of property from plaintiffs general population cell to be disc- arded punitively by other building inmates. However, some inmate witnesses informed the D.A.'s office of Monterey County about the unjust treatment and disregard for plaintiffs personal, sentimental, and legal effects. Some inmates even gathered up some of plaintiffs sentimental property (e.g. pictures, letters etc...) and mailed them to his family.

Plaintiff spent several months (eight to be exact) in Ad-seg after he was told he would only be in segregation for 30 days. While in segregation plaintiff was treated deplo- rably by AD-seg staff for which plaintiff filed several appeals to stop the harrassment and retaliation and treatment. Appeal coordinator Eloy Medina was deliberately indifferent to plaintiffs appeals. Losing them, screening them out, spurious rejections etc...putt- ing chilling effects on plaintiffs efforts to excercise his first Amend. right to U.S. Const. Plaintiff wrote to the D.A.'s office and even filed a writ to Monterey County Court for some sort of relief and to report inadequecy of the appeals Administrative remedy. Plai- ntiff contacted several outside organizations for assistance w/negative results. July 20, 2006 Plaintiff was taken to Inmate Classification Committee in retaliation and put up for adverse

(2)

transfer to High Desert State Prison over 500 hundred miles away from plaintiffs residence despite the fact that plaintiff was not in AD-seg under disciplinary circumstances. Plaintiff expressed dissatisfaction w/ committee members arbitrary and capricious actions in deciding to punitively adverse transfer plaintiff involuntarily for excercising his first Amendment constitutional right to file a prison grievance. Plaintiffs concerns were ignored by ICC chairman Moore, CCII Meden, CCI Garcia. Deliberate indifference persisted from the committee members even after plaintiff expressed he had done nothing to deserve an involuntary adverse transfer and that it would put him and his family in significant hardship. Plaintiff would punitively stay in AD-seg another 6 months filing appeals and writs refuting the legitimacy of the committee action. On Nov. 30, 2006 a subsequent committee was held. Reinstituting and re-incorporating the same arbitrary and capricious administrative action with no apparent legitimate penalogical purpose. Plaintiff again expressed to ICC chairperson L. Trexler, CDW(A) B. Rankin fc and CCI Meden of the retaliatory actions taken against plaintiff (E.S. Excessive AD-seg placement treatment in AD-seg, misappropriation of property and involuntary Adverse transfer). Prison officials all laughed at plaintiff and said, "Hey we don't want to make it seem like we're retaliating against you, where would you like us to transfer you". Plaintiff responded, that, "if you are adamant about transferring me because I reported staff misconduct, it should not be an adverse transfer, nor should the facility be so far away from plaintiffs family and home. CCI facility would be sufficient". ICC rescinded the first transfer location on paper and on Dec. 26, 2006 Plaintiff was transferred to H.D.S.P anyway, even though that location was rescinded. Plaintiff was sent there without his stored property. Plaintiff did not have his legal materials, appliances, cosmetics, nothing. Another attempt to put a chilling effect on plaintiffs ability to excercise his first Amendment right to actively pursue litigation (Hinez V. Gomez 108 F.3d 265, 269 (9th Cir. 1997). Plaintiff appealed and wrote Warden correspondence. Plaintiff did not recieve his property until May of 07.

   Plaintiff Aver that the suspect timing of the foregoing arbitrary and capricious actions came soon after the prison grievance for the March 23, 2006 incident and served no purpose other than retaliation and chilling effect on plaintiffs excercising first Amendment constitutional right to the U.S. (Hinez V. Gomez 108 f.3d 265, 269 (9th Cir 1997) Pratt V. Rowland 65 f. 3d 802)

   Plaintiff Aver that the foregoing is true and correct to his recollection on this 18th day of June, 2008

Respectfully /s/ Thomas Woodson
                Thomas Woodson

(3)

United States District Court for the
Northern District of California

## Proof of Service

I, the undersigned, hereby certify that I am a resident of Calipatria state prison P.O. Box 5005 Calipatria CA 92233.

On June 18, 2008 I served a true and correct copy of one "Amended Complaint" Case No. C 07-04925 CW (PR) by placing said documents (3) in number in a postage paid envelope addressed to: United States District Court Northern District of California Ronald V. Dellums federal building 1301 Clay street Suite 400 S Oakland, CA 94612-5212   hereinafter listed, by depositing said envelope in the U.S. mail via Calipatria state prison mail pick up. Correction officer recieving one envelope

Dated June 18, 2008

Respectfully /s/

Thomas Woodson

Thomas Woodson
Declarant