United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

THOMAS RAY WOODSON,

Plaintiff,

v.

J. RODRIGUEZ, et al.,

Defendants.
_______________________________/

No. C 07-04925 CW (PR)

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

(Docket no. 25)

INTRODUCTION

Plaintiff Thomas Ray Woodson, a state prisoner currently incarcerated at Calipatria State Prison, filed the present pro se civil rights action pursuant to 42 U.S.C. § 1983 alleging a constitutional rights violation while incarcerated at Salinas Valley State Prison (SVSP). In an Order dated May 21, 2008, the Court granted Plaintiff's motion to proceed in forma pauperis and found that Plaintiff presented a cognizable claim of excessive force. Plaintiff's retaliation claim based on his alleged retaliatory transfer to High Desert State Prison (HDSP) was dismissed with leave to amend. He was instructed to file an amended retaliation claim within thirty days of the date of the order. His remaining retaliation claim based on delays in medical care was dismissed with prejudice. The Court issued an order for service of Plaintiff's excessive force claim.

On June 23, 2008, Plaintiff filed his amended retaliation claim.

Defendants now move to dismiss the complaint on the grounds that Plaintiff's amended retaliation cause of action fails to state a claim upon which relief can be granted under Federal Rule of

**United States District Court**
For the Northern District of California

Civil Procedure 12(b)(6) and that Plaintiff has failed to exhaust his administrative remedies as to his excessive force claim. Plaintiff has filed an opposition, and Defendants have filed a reply. For the reasons discussed below, the Court GRANTS in part Defendants' motion to dismiss and DENIES it in part.

BACKGROUND

In its previous order, the Court summarized the facts alleged by Plaintiff as follows:

> Plaintiff alleges that Defendants SVSP Sergeant Kircher and SVSP Correctional Officers J. Rodriguez, E. Camarena, J. Parra and D. Vega used excessive physical force in violation of the Eighth Amendment. Specifically, Plaintiff claims that at around 1:00 p.m. on March 23, 2006, a mass cell search occurred because a sheet pan was missing from the kitchen. Defendants Rodriguez, Camarena and Parra approached Plaintiff's cell during the search, ordered Plaintiff to put his hands through the food port in order to place handcuffs on him, and handcuffed him for cell removal. Afterwards, Defendants Rodriguez and Camarena "thrash[ed] Plaintiff's cell" while Defendant Parra detained Plaintiff against the wall outside of his cell. Plaintiff then attempted to inform Defendant Kircher "about the harrassment [sic] he was going through under the guise of a cell search." (Compl. at 4.) Plaintiff slightly turned his head to convey his message and stated, "I need to speak with you Sergeant, I am being harassed." (Id.) When Plaintiff received no response, he asked Defendant Kircher if he was "condoning this harrassment [sic]." (Id.) Defendant Kircher ignored Plaintiff and ordered Defendants Parra and Vega to remove Plaintiff from the area. As Defendants Parra and Vega removed Plaintiff, Plaintiff asked Defendant Kircher again if he was "sanctioning this harrassment [sic]." Defendant Kircher then ordered Defendants Parra and Vega "to take Plaintiff down." (Id.) Defendant Parra kicked Plaintiff's feet out from under him causing him to fall face first onto the pavement and to suffer from a swollen right eye. While Plaintiff was on the ground, Defendant Parra "used further unnecessary brut force by bending Plaintiffs [sic] cuffed right wrist and arm up towards Plaintiff's head causing excruciating pain to Plaintiffs [sic] wrist and shoulder joints." (Id.) Defendant Vega "dropped his knee with [his] full body weight [on] Plaintiffs [sic] neck and upper back, laughing and giggling at Plaintiff's squeels [sic] of pain." (Id.) In response to the commotion, Defendants

> Camarena and Rodriguez along with "several other unidentified guards" approached Plaintiff while he was on the floor and began kicking Plaintiff in the legs and hips.
>
> After shackling Plaintiff's legs, Defendants Parra and Vega forced Plaintiff to stand up and walk with his boxers down exposing his genitalia. Plaintiff was then taken outside where Defendants Parra and Vega threw him to the ground again damaging his knees, dislocating his shoulder, and scraping the skin off of his swollen right eye. Plaintiff told Defendant Kircher that his shoulder was dislocated. Defendant Kircher instructed Defendants Camarena and Rodriguez to take over as Plaintiff's escorts. Defendant Kircher later ordered them to check Plaintiff's handcuffs and to put him down. After his handcuffs were checked, Plaintiff was yanked to his feet by Defendants Rodriguez and Camarena and again "thrown" to the cement pavement, which caused his shoulder to "pop[] back into [its] socket." (Id. at 5.)
>
> Subsequently, Plaintiff was placed in a standing room only holding cell. While in the cell, he asked for a doctor to treat his dislocated shoulder and for pictures to be taken of his injuries, but Nurse Moore denied Plaintiff's request. After some time had passed, Doctor Sue arrived and found several injuries on Plaintiff's body after conducting a visual examination. As a result, Doctor Sue ordered Nurse Moore to document Plaintiff's injuries on a CDC Form 7219. Plaintiff was escorted back to the general population at approximately 4:15 p.m.
>
> Plaintiff filed several 602 inmate appeals, but he claims they were screened out. After filing more 602 appeals, Plaintiff claims that he received a retaliatory CDC 115 write-up on April 5, 2006. Plaintiff alleges he eventually exhausted his administrative remedies with respect to these claims. He seeks monetary compensation and injunctive relief for his physical and emotional injuries.

(May 21, 2008 Order of Service at 1-3.)

## DISCUSSION

### I. Failure to State a Claim

#### A. Standard for Review

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). When considering a motion to dismiss under Rule

United States District Court
For the Northern District of California

12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007).

In considering whether the complaint is sufficient to state a claim, the district court must accept all factual allegations as true and construe them in the light most favorable to the plaintiff. Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007); NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). However, the court need not accept as true allegations that are legal conclusions, unwarranted deductions of fact or unreasonable inferences. See Sprewell v. Golden State Warriors, 266 F.3d 979, 988, amended, 275 F.3d 1187 (9th Cir. 2001). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

A plaintiff may negate his claim by including unnecessary details that contradict it. Sprewell, 266 F.3d at 988. A court, for example, is not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint. Bell Atl. Corp., 127 S. Ct. at 1965; Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295-96 (9th Cir. 1998). "[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim." McGlinchy v. Shell Chemical Co., 845 F.2d 802, 810 (9th Cir. 1988). A court "is not required to accept legal conclusions cast in the form of

United States District Court
For the Northern District of California

factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994).

B. Analysis

In his amended complaint, Plaintiff claims that his transfer from SVSP to HDSP was the result of retaliation by Defendants for Plaintiff's filing of inmate grievances. (Am. Compl. at 2-3.)

Defendants first argue that Plaintiff does not allege that any of the named Defendants were responsible for the transfer. This argument is unavailing because, as discussed below, Plaintiff names additional parties in his amended retaliation claim and alleges they are responsible for the transfer. In the alternative, Defendants also move to dismiss Plaintiff's amended retaliation cause of action for failure to state a claim upon which relief can be granted.

Plaintiff claims that on July 20, 2006, he "was taken to [the] Inmate Classification Committee [ICC] in retaliation and put up for adverse transfer to High Desert State Prison over 500 miles away from Plaintiffs [sic] residence despite the fact that Plaintiff was not in ad-seg under disciplinary circumstances." (Am. Compl. 2-3.) Plaintiff claims he expressed his dissatisfaction with the committee members' "arbitrary and capricious actions in deciding to punitively . . . transfer Plaintiff involuntarily for exercising his First Amendment constitutional right to file a prison grievance." (Id. at 3.) Plaintiff claims his concerns were ignored by ICC Chairman Moore as well as SVSP Correctional Counselors Meden and Garcia. Finally, Plaintiff claims: "Deliberate indifference persisted from the committee members even

after Plaintiff expressed he had done nothing to deserve an involuntary adverse transfer and that it would put him and his family in significant hardship." (Id. at 3.) On November 30, 2006, a subsequent committee hearing was held, during which Plaintiff claims the committee members "reinstitut[ed] and reincorporat[ed] the same arbitrary and capricious action with no apparent legitimate penalogical [sic] purpose." (Id.) Plaintiff claims that he complained about the retaliatory transfer to ICC Chairperson L. Trexler as well as SVSP Lieutenant B. Rankin and Correctional Counselor Meden.[1] Plaintiff claims that these prison officials "all laughed at Plaintiff and said, 'Hey we don't want to make it seem like we're retaliating against you, where would you like us to transfer you.'" (Id.) Plaintiff claims that he responded, "[I]f you are adamant about transferring me because I reported staff misconduct, it should not be an adverse transfer nor should the facility be so far away from Plaintiff [sic] family and home, CCI [California Correctional Institution] facility would be sufficient." (Id.) Plaintiff alleges that "ICC rescinded the first transfer location on paper and on Dec. 26, 2006 Plaintiff was transferred to HDSP anyway, even though that location was rescinded." (Id.) Plaintiff names additional parties in his amended claim -- Moore, Meden, Garcia, Trexler and Rankin -- as

---

[1] In his amended complaint, Plaintiff also complains of additional retaliatory actions, including "excessive ad-seg placement" and "misappropriation of property." (Am. Compl. at 2-3.) However, Plaintiff did not allege such retaliatory actions in his original complaint. Moreover, the Court granted Plaintiff leave to amend only his claim of a retaliatory transfer from SVSP to HDSP. (May 21, 2008 Order of Service at 9.) Therefore, Plaintiff's claims of other retaliatory actions are DISMISSED without prejudice to filing a motion for leave to amend to add them to this action.

those liable for the retaliatory transfer and claims that the "suspect timing of the foregoing arbitrary and capricious actions came soon after the prison grievance for the March 23, 2006 incident and served no purpose other than retaliation and chilling effect on Plaintiff's ability to exercise his First Amendment right to actively pursue litigation." (Id. (citing Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997).)

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). To prove retaliation, a plaintiff must show that the defendants took adverse action against him or her that "would chill or silence a person of ordinary firmness from future First Amendment activities." White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000) (citing Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999)).

Retaliation is not established simply by showing adverse activity by a defendant after protected speech; rather, the plaintiff must show a nexus between the two. See Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000). However, retaliatory motive may be shown by the timing of the alleged retaliatory act, as well as by direct evidence. Bruce v. Ylst, 351 F.3d 1283, 1288-89 (9th Cir. 2003).

Although prison officials are invested with broad discretion to make decisions to transfer inmates to other prisons, they may not retaliate against inmates for the exercise of their First Amendment rights. However, a retaliation claim is not stated where the prisoner does not allege that the defendants' actions caused him some injury, Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), or, in the case of alleged retaliatory transfer, if the decision may be upheld on a constitutionally valid basis, Sher v. Coughlin, 739 F.2d 77, 82 (2d Cir. 1984). Here, the allegations in Plaintiff's amended retaliation claim still do not allege any nexus between his grievances and the transfer. Plaintiff bases his claim on what he considers the "suspect" or "dubious timing" of the alleged retaliatory transfer. (Am. Compl. at 1, 3.) The Court had previously informed Plaintiff that his allegation "that the transfer occurred after the grievances were filed does not, without more, establish retaliation." (May 21, 2008 Order of Service at 7 (citing Huskey, 204 F.3d 893 at 899).) The Court cannot accept as true Plaintiff's allegation that the alleged retaliatory transfer "came soon after the prison grievance for the March 23, 2006 incident" because this allegation is contradicted by allegations in his amended retaliation claim. See Sprewell, 266 F.3d at 988; see also Bell Atl. Corp., 127 S. Ct. at 1965; Steckman, 143 F.3d at 1295-96. Specifically, he claims that the alleged retaliatory transfer did not take place until December 26, 2006, nine months after the March 23, 2006 incident. Plaintiff fails to state a claim of retaliatory transfer against the newly named parties.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's cause of action for retaliatory transfer for failure to

state a claim. Because Plaintiff has already been granted leave to amend this claim, the dismissal is without further leave to amend. See Janicki Logging Co. v. Mateer, 42 F.3d 561, 566 (9th Cir. 1994) (futility grounds to deny leave to amend).

II. Failure to Exhaust Administrative Remedies

A. Standard of Review

The Prison Litigation Reform Act of 1995 (PLRA) amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Although once within the discretion of the district court, exhaustion in prisoner cases covered by § 1997e(a) is now mandatory. Porter v. Nussle, 534 U.S. 516, 524 (2002). All available remedies must now be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" Id. (citation omitted). Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. Id.; Booth v. Churner, 532 U.S. 731, 741 (2001). Similarly, exhaustion is a prerequisite to all prisoner suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter, 534 U.S. at 532.

The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." Woodford v. Ngo, 548 U.S. 81, 84 (2006). "The text of 42 U.S.C. § 1997e(a) strongly suggests

that the PLRA uses the term 'exhausted' to mean what the term means in administrative law, where exhaustion means proper exhaustion." Id. at 92. Therefore, the PLRA exhaustion requirement requires proper exhaustion. Id. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91 (footnote omitted); Jones v. Bock, 549 U.S. 199, 218 (2007) (compliance with prison grievance procedures is required by the PLRA to "properly exhaust"). The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. Id.

The State of California provides its prisoners the right to appeal administratively "any departmental decision, action, condition or policy" perceived by those individuals as adversely affecting their welfare. Cal. Code Regs. tit. 15, § 3084.1(a). It also provides them the right to file appeals alleging misconduct by correctional officers and officials. Id. § 3084.1(e). As to content, the regulations only instruct the prisoner to "describe the problem and action requested . . . ." Id. at § 3084.2(a).

In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal on a 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the California Department of Corrections and Rehabilitation (CDCR).

Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. 15, § 3084.5). A final decision from the Director's level of review satisfies the exhaustion requirement under § 1997e(a). Id. at 1237-38.

Non-exhaustion under § 1997e(a) is an affirmative defense which should be brought by defendants in an unenumerated motion to dismiss under Federal Rule of Civil Procedure 12(b). Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).

B. Analysis

In the present case, Defendants correctly raise non-exhaustion in an unenumerated motion to dismiss. Defendants argue that Plaintiff did not properly exhaust his administrative remedies prior to the filing of his complaint as mandated by § 1997e(a). Defendants acknowledge that Plaintiff submitted an inmate grievance regarding his excessive force claim and that it was denied at the Director's level of review. (Mot. to Dismiss at 9; Defs.' Ex. A.) However, they contend that the contents of this grievance were not sufficient to raise the issues Plaintiff pursues in this case. Specifically, they argue that Plaintiff's grievance "did not request any monetary, punitive or nominal damages, which is the relief he seeks in this Court." (Id. (citing to Compl., Ex. A).) They point out that his grievance "requested solely that his allegations of excessive force be investigated, that the officers involved be disciplined, and that the institution abide by the no-reprisal policy." (Id.) They argue that Plaintiff did not comply with the procedural requirements of the California regulations mentioned above, specifically with Title 15 of the California Code of Regulations § 3084.2(a), which requires that an inmate "describe

the problem and action requested . . . ." (Id. (citing Cal. Code Regs. tit. 15, § 3084.2(a)).) In sum, Defendants argue that while Plaintiff submitted and exhausted his grievance, he did not request monetary compensation in his grievance and therefore he did not exhaust his claim for money damages. Plaintiff contends that his administrative grievance satisfied the exhaustion requirements because he specifically complained in the grievance about the misconduct of Defendants at issue in this action.

Recently, the Ninth Circuit adopted the Seventh Circuit's standard articulated in Strong v. David as the proper standard of factual specificity required when a prison's grievance procedures do not specify the requisite level of detail. Griffin v. Arpaio, No. 06-16132, slip op. 2771, 2777 (9th Cir. Mar. 5, 2009) (citing Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002). Strong held that, when a prison's grievance procedures are silent or incomplete as to factual specificity, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." Id. Thus, according to the Ninth Circuit, a grievance "need not contain every fact necessary to prove each element of an eventual legal claim." Griffin, slip op. at 2778. "The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." Id. (citing Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004), cited with approval in Jones, 549 U.S. at 219).

Here, Plaintiff's problem concerned the use of excessive force against him by Defendants. Notifying the prison officials at SVSP of that problem did not require him to raise his claim for money damages. Plaintiff's grievance, which identified the Defendants in

**United States District Court**
For the Northern District of California

this action, alleged that these Defendants used excessive force against him. Plaintiff's grievance was sufficient to satisfy the exhaustion requirement in that it placed prison officials on notice as to the misconduct and allowed them to take any action they saw fit to take. Moreover, Plaintiff fully exhausted his excessive force claim because he pursued his appeal through the final level of review.

Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiff's excessive force claim for failure to exhaust administrative remedies.

CONCLUSION

For the foregoing reasons,

1. The Court GRANTS in part and DENIES in part Defendants' motion to dismiss (docket no. 25). Plaintiff's amended retaliation claim is DISMISSED without further leave to amend. Plaintiff's action may proceed with his remaining excessive force claim.

2. In order to expedite the resolution of this case, the Court further orders:

a. Defendants shall answer the complaint no later than <u>thirty (30) days</u> from the date of this Order. In addition, no later than <u>ninety (90) days</u> from the date of this Order, Defendants shall file a motion for summary judgment or other dispositive motion. The motion shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure 56. If Defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior to the date the summary judgment motion is due.

United States District Court
For the Northern District of California

All papers filed with the Court shall be promptly served on Plaintiff.

b. Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on Defendants no later than thirty (30) days after the date on which Defendants' motion is filed. The Ninth Circuit has held that the following notice should be given to pro se plaintiffs facing a summary judgment motion:

> The defendants have made a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
>
> Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted [in favor of the defendants], your case will be dismissed and there will be no trial.

See Rand v. Rowland, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc).

Plaintiff is advised to read Rule 56 of the Federal Rules of Civil Procedure and Celotex Corp. v. Catrett, 477 U.S. 317 (1986) (party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim). Plaintiff is cautioned that because he bears the

United States District Court
For the Northern District of California

burden of proving his allegations in this case, he must be prepared to produce evidence in support of those allegations when he files his opposition to Defendants' dispositive motion. Such evidence may include sworn declarations from himself and other witnesses to the incident, and copies of documents authenticated by sworn declaration. Plaintiff will not be able to avoid summary judgment simply by repeating the allegations of his complaint.

c. If Defendants wish to file a reply brief, they shall do so no later than thirty (30) days after the date Plaintiff's opposition is filed.

d. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

3. Discovery may be taken in this action in accordance with the Federal Rules of Civil Procedure. Leave of the Court pursuant to Rule 30(a)(2) is hereby granted to Defendants to depose Plaintiff and any other necessary witnesses confined in prison.

4. All communications by Plaintiff with the Court must be served on Defendants by mailing a true copy of the document to Defendants' counsel.

5. It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion.

6. Extensions of time are not favored, though reasonable extensions will be granted. Any motion for an extension of time must be filed no later than fifteen (15) days prior to the deadline sought to be extended.

7. This Order terminates Docket no. 25.

IT IS SO ORDERED.

DATED: 3/24/09

CLAUDIA WILKEN
United States District Judge

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

THOMAS RAY WOODSON,

Plaintiff,

v.

J. RODRIGUEZ et al,

Defendant.
_______________________________________/

Case Number: CV07-04925 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 24, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Thomas Ray Woodson P-76095
"C" Facility Calipatria State Prison
Calipatria, CA 92253

Dated: March 24, 2009

Richard W. Wieking, Clerk
By: Sheilah Cahill, Deputy Clerk