UNITED STATES DISTRICT COURT

Northern District of California

Oakland Division

| | |
|---|---|
| THOMAS RAY WOODSON,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>J. RODRIGUEZ, *et al.*,<br><br>　　　　　Defendants.<br>_____ / | No. C 07-04925 CW (LB)<br><br>**ORDER REGARDING MAY 11, 2011 JOINT DISCOVERY LETTER**<br><br>**[ECF No. 134]** |

## I. INTRODUCTION

This case involves Plaintiff Thomas Ray Woodson's claim that prison guards at Salinas Valley State Prison used excessive force in violation of the Eighth Amendment and 42 U.S.C. § 1983 during a search of his cell in March 2006. *See* Complaint, ECF No. 1.[1] The district court referred discovery disputes to this court.

## II. PENDING DISCOVERY DISPUTE AND RELEVANT FACTS

On May 11, 2011, the parties filed a joint letter because at the deposition of Plaintiff's medical expert Dr. Steven Graboff, Dr. Graboff – a former member of the American Academy of Orthopaedic Surgeons (AAOS) (an educational and politically-oriented group) – refused to answer questions Defendants asked him about the AAOS's 2008 investigation of him for unprofessional conduct in giving expert testimony.

---

[1] Citations are to the Clerk's Electronic Case File (ECF) with pin cites to numbers at the top (as opposed to the bottom) of the page.

C 07-04925 CW (LB)
ORDER REGARDING 5/11/11 JOINT DISCOVERY LETTER

5/11/11 Letter, ECF No. 134, at 1; Jose Zelidon-Zepeda Declaration, ECF No. 135 at 2; Deposition of Steven R. Graboff, M.D., ECF No. 135 at 7-8, pp.156:15-17, 158:3-7, 158:5-19.  The following colloquy took place between Jose Zelidon-Zepeda (JZZ), the Defendants' attorney, and Dr. Graboff (SRG):

JZZ: [A]ccording to this document, the American Academy of Orthopedic Surgeons investigated you for quote, "unprofessional conduct in the performance of expert testimony," unquote.  Is that correct?

SRG: Yes.

JZZ: And the American Academy of Orthopedic Surgeons eventually found you guilty of those charges; is that correct?

SRG: I'm not going to answer these questions today on the advice of my own attorney, which is not [Plaintiff's attorney] . . . but I have my own attorney who advised me not to answer those kinds of questions since my own deposition through my own federal lawsuit is coming up April 11, and so I will not be answering that question.

JZZ: Doctor, I'll try to clarify this because I definitely don't want to impugn in any way your privilege or affect your litigation against this other organization.  All I'm asking is did the academy find you guilty of those charges?  I'm not asking you whether you were guilty or you did anything wrong.  I'm asking whether they found you guilty of that.

SRG: They did not use the word guilty.

JZZ: What word did they use?

SRG: I'm not going to answer that question today based on the advice of my attorney.

JZZ: Okay, I understand.  Now that investigation from the American Academy of Orthopedic Surgeons arose from a case where you served as an expert for a plaintiff claiming medical malpractice against another doctor; is that correct?

SRG: That's true.

JZZ: In your expert report in that case, you initially opined that the defendant doctor was negligent and fell below the standard of care; is that correct?

SRG: I'm not going to answer that question based on the advice of my attorney.

JZZ: After a hearing, you changed your mind and admitted that your initial report was based on, quote, "lack of information," unquote; is that correct?

SRG: That's part of the issue at stake in my current lawsuit, and I'm not going to answer that question based on the advice of my attorney.

Graboff Deposition, ECF No. 135 at 8, pp. 158:5-25 to 159:1-23.  Defendants' counsel then asked whether Dr. Graboff had asked if his attorney could be at the deposition, and Dr. Graboff responded that he had not because she was in Philadelphia.  *Id.* at 8, p. 160:2-6.  Defendants' counsel then noted his

objection to "the lack of preparation to answer these particular questions which go directly to the relevance of his opinion and the weight of his opinions." *Id.*, p. 160:7-11. Dr. Graboff then declined to answer a final question about whether he had "changed [his] . . . opinion and decided that the defendant doctor had not failed to meet the standard of care." *Id.* p. 160:14-18.

Plaintiff offers information about the AAOS investigation, which was about Dr. Graboff's expert services in a medical malpractice case. Joint Letter, ECF No. 134 at 4; Janelle Sahouria Declaration, ECF No. 136 at 2 & Exh. A (Dr. Graboff's complaint against AAOS). That case involved an amputation of a patient's leg based on alleged negligent medical care. ECF No. 136, Exh. A, ¶ 13. In his draft report in that case (marked "Draft Report"), Dr. Graboff opined preliminary that the medical care was negligent. *Id.*, ¶ 16. When he submitted the report, he told the amputee's attorney that he would not finalize his report or testify until he had reviewed all of the medical records and radiologic studies. *Id.*, ¶ 17. Dr. Graboff never heard from the attorney again and was not asked to submit a final report or otherwise testify at a deposition or trial, and thus he assumed the case had not gone forward. *Id.*, ¶¶ 18-20.

In fact, the attorney – without Dr. Graboff's knowledge – altered the report to delete the words "Draft Report" and submitted it as final. Joint Letter, ECF No. 134 at 4; Complaint, ECF No. 136, ¶¶ 34-35. The amputee's lawyer confirmed that his office had "whited out" the words "draft" and sent the altered report to the allegedly negligent doctor's lawyer for settlement discussions, but in a letter, he also maintained that the words "draft" meant nothing to him and that he thought the report was "legally sufficient . . . and certainly demonstrated that you reviewed the requisite records to criticize [the doctor who amputated the leg." ECF No. 136, ¶¶ 37-39. He later clarified that it was his decision to white out the word "draft" and that "Dr. Graboff's 'draft' report from his perspective in essence became his final report from mine." *Id.*, ¶ 60(e). Ultimately, the AAOS suspended Dr. Graboff's membership for two years for giving a medical opinion without review of all medical records. *Id.*, ¶¶ 40-67 (details chronology, including what the AAOS ignored in its – according to the complaint – erroneous decision). Dr. Graboff resigned from the AAOS in 2009. *Id.*, ¶ 72.

### III. DISCUSSION

Defendants argue that they were entitled to ask about the AAOS investigation because it was relevant to Dr. Graboff's qualifications and credibility as an expert. Joint Letter, ECF No. 134 at 2. Plaintiff

responds that the investigation is not relevant, the information may implicate privilege, the investigation is not admissible at trial, and the information is cumulative.

The parties are entitled to discover any non-privileged matter relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

The information sought here is about another case and investigation about Dr. Graboff's allegedly unprofessional conduct. On this record, this implicates Dr. Graboff's qualifications and credibility as an expert enough to at least permit Defendants to ask Dr. Graboff about it at his deposition. How Dr. Graboff comported himself may be relevant to truthfulness, competence, or bias, again at least enough so that questions were appropriate at the deposition. As Defendants point out, admissibility at trial is not the standard. At the end, a motion in limine can address issues of admissibility. *See* Joint Letter Brief, ECF No. 134 at 5 (citing ECF No. 136, Exh. B, ¶ 6 (San Francisco Superior Court found facts about Graboff's AAOS case relevant but excluding it at trial as distracting and time-consuming).

The deposition record does not suggest any issue about privilege. As set forth above, Defendants' counsel made it clear that he did not want to inquire into privileged communications and asked only about facts and what happened, not about privileged communications. Even now, Plaintiff argues only – and without citation to any facts or authority – that the information "may" be privileged. Joint Letter, ECF No. 134 at 5. That does not identify the privileged information sufficiently, particularly when – as here – counsel's questions were directed at facts, not legal advice. *Cf. United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) (setting forth legal standard protecting confidential attorney-client communications from disclosure). Also, the person asserting the privilege must identify the grounds supporting the assertion of privilege. *See id.* That is not what happened here. What really was going on is that Dr. Graboff had an upcoming deposition in his own case in April, and his absent lawyer told him not to say anything about it in the March 23, 2011 deposition in this case. Thus, it was Dr. Graboff who unilaterally declined to answer questions about the investigation. This record does not establish any ground for refusing to answer the questions. If a question would elicit privileged information, that is the basis for an objection. But that is not what happened here: Dr. Graboff (without objection or intervention by Plaintiff's counsel) asserted blanket objections to questions that did not call for privileged information.

Thus, based on the record provided by the parties, the court finds that the information sought is relevant and non-privileged. Plaintiff argues, though, that an investigation by a voluntary society over three years ago is a collateral issue that does not bear on the case here, and that the expense of an additional deposition outweighs the benefit. Joint Letter, ECF No. 134 at 5. But that conjecture at the discovery stage does not change the court's analysis, particularly given that Plaintiff apparently precipitated this situation. Plaintiff had to know in advance that Dr. Graboff would raise this issue. His attorney knew that he had the deposition. A modest procedural accommodation (like having the attorney available by telephone) might have allowed the parties to address privilege issues real-time. Discussing the issue in advance would have avoided this situation too. There are two ways to do that: the parties can talk, or they can call the court. As the court observed in the last discovery dispute, this court's standing order and Civil Local Rule 37-1(b) permit the parties to contact the court by telephone to resolve a discovery dispute. The court encourages that process with the parties here. This dispute and the last one both implicate Dr. Graboff's deposition. If the parties cannot work it out on their own, they ought to call the court, especially when a dispute can be addressed real-time and avoid costs. (Already, the last two disputes have resulted in costs that the parties could have avoided easily.)

The remaining issue – which also implicates the court's last order about Dr. Graboff's two- and three-page additional reports – is who ought to pay for the additional deposition of Dr. Graboff. Last time, based on its assessment that the government could have avoided the situation by asking the court, the court declined to order Plaintiff to pay for the deposition (even though it recognized that providing information late seems unfair). But now, the court has a situation where Plaintiff potentially could have fronted the issue, and that might have allowed the parties to work out logistics short of litigation and avoid costs.

From the parties' joint discovery letter, it seems they were close to working out an agreement to avoid the current joint letter. With the information in this order, the parties may be able to solve their logistics and payment issues themselves. But in case they cannot, the court sets this matter for a hearing on Thursday, June 2, 2011 at 11 a.m., which is the court's regularly-scheduled civil motions calendar. The parties may vacate this date if they work it out, or they may change the date if it interferes with already-scheduled

///

///

events.

**IT IS SO ORDERED.**

Dated: May 29, 2011

_____
LAUREL BEELER
United States Magistrate Judge